Jeff C. BRIGGS, et al., Plaintiffs,

v.

COUNTRYWIDE FUNDING CORP.,
et al., Defendants.

No. Civ.A. 95–D–859–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 10, 1999.

See also: 183 F.R.D. 576.

Richard H. Gill, Montgomery, AL, William U. Norwood, Atlanta, GA, Wade H. Tomlinson, Columbus, GA, C. Knox McLaney, III, Montgomery, AL, Lynn W. Jinks, Union Springs, AL, Angela L. Kimbrough, Tuscaloosa, AL, for plaintiff.

John H. Morrow, Matthew H. Lembke, Richard H. Monk, III, Birmingham, AL, John C. Englander, Thomas M. Hefferon, Boston, MA, Randall B. Perry, Huntsville, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Plaintiff Briggs' Renewed Motion For Class Certification With Regard To Plaintiff's RESPA Claim Against Defendant Countrywide ("Plaintiff's Renewed Motion"), filed on January 22, 1999 together with Plaintiff's Memorandum Of Law In Support thereof ("Plaintiff's Memorandum"). Defendant Countrywide Funding Corporation ("Countrywide") filed an Opposition To Plaintiff's "Renewed Motion For Class Certification," which the court construes as a Response ("Countrywide's Response"), on February 16, 1999. Plaintiff Briggs filed a Reply In Support Of Renewed Motion For Class Certification With Regard To Plaintiff's RESPA Claim Against Coun-

trywide ("Plaintiff's Reply") on March 1, 1999.[1] After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiff's Renewed Motion is due to be denied.

## BACKGROUND

On September 23, 1994, Plaintiff obtained a mortgage to refinance his home. The named creditor on the loan was Defendant Madison Equity Mortgage Co., Inc. ("MEMCO"), although, in fact, MEMCO was merely the mortgage broker. The actual source of the loan was Defendant Countrywide. Countrywide and MEMCO had an agreement whereby Countrywide agreed to fund loans made by MEMCO in exchange for MEMCO's promise to assign, upon closing, all of its rights and interests in the mortgage to Countrywide.

Upon closing, Plaintiff received an HUD–1 Settlement Statement, which detailed the costs and fees associated with the mortgage loan. The HUD–1 Settlement Statement showed that, inter alia, a yield spread premium was paid to MEMCO by Countrywide.[2]

Plaintiff commenced the above-styled action by filing a Complaint on June 22, 1995, wherein he alleges, inter alia, violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, and Regulation X, 24 C.F.R. Part 3500.[3] Specifically, Plaintiff claims that Defendant charged and/or received fees for settlement services that either were duplicative, were not actually provided, or were in fact prohibited referral fees.

Plaintiff filed a Motion For Class Certification on April 15, 1996, then filed an Amended Motion To Certify Class on September 10, 1996. On September 10, 1997, the Magistrate Judge entered a Recommendation ("Recommendation"), wherein the Magistrate Judge recommended that Plaintiff's Amended Motion To Certify Class be denied as to Plaintiff's RESPA claim for failure to prove the predominance prong of Federal Rule of Civil Procedure 23(b)(3). This court adopted, approved, and affirmed said Recommendation on September 29, 1997.

Plaintiff filed the instant Renewed Motion for class certification on January 22, 1999, wherein Plaintiff seeks to certify the following class:

> All persons residing in the United States and its territories who, during the period of June 22, 1994, forward, obtained a mortgage loan from a mortgage broker where the loan was funded and owned by Defendant Countrywide Funding Corporation, where the loan was a federally related mortgage loan, where a loan origination fee or other compensation was paid to the mortgage broker, and where the HUD–1 or HUD–1A form or other mortgage loan

---

1. Additionally, Defendant Countrywide filed a Motion To Strike Newly–Submitted "Evidence" On Class Certification Issue on February 16, 1999 ("Motion To Strike"). Plaintiff filed a Response In Opposition To Countrywide's Motion To Strike Newly–Submitted Evidence On Class Certification Issue. The court finds that Defendant's Motion To Strike is due to be denied.

   The court also notes that the Parties submitted numerous filings of supplemental authority: Plaintiff filed a Supplemental Authority In Support Of Plaintiff's Motion For Class Certification on March 31, 1999; Defendant filed a Response To Plaintiff's Filing Of Supplemental Authority On The Class Certification Issue on April 19, 1999; Plaintiff filed a Reply To Countrywide's Response To Plaintiff's Filing Of Supplemental Authority On The Class Certification Issue ("Pl.'s Supp. Reply") on April 27, 1999; Plaintiff filed a Notice Of Filing on June 17, 1999; Plaintiff filed a Notice Of Filing Supplemental Authority on June 24, 1999; Defendant filed a Notice Of Filing Supplemental Authority On The Class Certifi-

cation Issue on July 12, 1999; and Plaintiff filed a Supplemental Authority In Support Of Plaintiff's Renewed Motion For Class Certification on July 23, 1999.

2. A "yield spread premium" is a payment made by a mortgage lender (Countrywide) to a mortgage broker (MEMCO) on an "above par" loan brought to the lender by the broker. "Par" is the lowest rate that a lender will offer without charging any discount points. To be "above par" means that the rate charged is above the current going rate. "In crude terms, therefore, the yield spread premium is (allegedly) simply a payment made by the lender to the broker in return for the broker having brought the lender a high interest loan." *Taylor v. Flagstar Bank, FSB*, 181 F.R.D. 509, 511 (M.D.Ala.1998).

3. Regulation X was promulgated on December 21, 1998 by the Department of Housing and Urban Development ("HUD") as Part 3500 of Title 24 of the Code of Federal Regulations.

documentation shows a yield spread premium, par rate plus premium, premium pricing fee or service release premium, however denominated, was paid the mortgage broker by the lender, Defendant Countrywide.

(Pl.'s Renewed Mot. at 1–2.) According to Plaintiff, the Eleventh Circuit's decision in *Culpepper v. Inland Mortgage*, 132 F.3d 692 (11th Cir.) (*"Culpepper I "*), *reh'g and reh'g en banc den.*, 144 F.3d 717 (11th Cir.1998) (concerning yield premium spread class certification) (*"Culpepper II "*), entered subsequent to this court's denial of Plaintiff's Amended Motion To Certify Class, "has clarified the substantive issue of RESPA liability [so as] to make an action, such as this, particularly appropriate for class certification." (Pl.'s Memo. at 1–2.)

## DISCUSSION

The court has broad discretion in deciding whether to certify a class. *See Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir.1992). The burden of establishing the specific prerequisites to a Rule 23 action falls on those seeking to certify their suit as a class action. *See Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984). In determining whether the plaintiff has met his burden, the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied; therefore, the court will not consider the merits of the plaintiffs' claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). To satisfy the requisites of Rule 23, the four elements of Rule 23(a) must be met: numerosity, commonality, typicality, and adequacy of representation. Fed.R.Civ.P. 23(a). Further, the court must determine whether the action may be maintained as one of the classes enumerated under Rule 23(b). Fed.R.Civ.P. 23(b).

In the instant case, because it is undisputed that the proposed class satisfies the requirements of Rule 23(a), the court focuses its inquiry on Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), which provides that a class be certified where:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). Although the merits of Plaintiff's claims are not an issue before the court, "evidence relevant to the commonality requirement is often intertwined with the merits." *Nelson v. United States Steel Corp.*, 709 F.2d 675, 679 (11th Cir.1983). Thus, it sometimes is necessary "to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

In the Recommendation, the court concluded that class certification should be denied as to Plaintiff's RESPA claim. Focusing on the predominance prong of Rule 23(b)(3), the court determined that:

[T]o investigate Countrywide and its brokers' liability to the some 77,056 proposed plaintiffs, the trier of fact would need to investigate the services actually performed and fees charged in each specific instance. Whether such fees were reasonable in each instance would require a comparison of the services performed by the broker for each individual with the amount of the fees charged in each instance.

(Rec. at 9.) The court found that "[s]uch individual inquiries predominate over questions common to the class as a whole and make the certification of a 23(b)(3) class in this instance inappropriate." (*Id.*)

Plaintiff brings his Renewed Motion in the wake of the Eleventh Circuit's *Culpepper I* decision, which case Plaintiff claims "nullifies the legal foundation of this Court's class certification denial and the orders of other courts denying yield spread premium class certification." (Pl.'s Memo. at 1.) Specifically, Plaintiff claims that the *Culpepper I* decision held "that the 'reasonable relationship' test of 24 C.F.R. § 3500.14(g)(2) [Regulation X] *cannot* be applied unless it is first determined that the premiums paid were for 'goods or services actually performed' " (Pl.'s Memo. at 1 (emphasis in original)), and that "a class should be certified to determine, in

the first instance, whether the premiums paid were, as a matter of course, payments for goods or services or payments for the referral of loans." (Pl.'s Mot. at 2.) As explained below, the court disagrees with Plaintiff and finds that the proposed class is not due to be certified for the limited inquiry of whether the payments were for goods or services because Plaintiff fails to satisfy the predominance requirement of Rule 23(b)(3).

Concerning referral payments and yield spread premiums, both RESPA and Regulation X provide that:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a); 24 C.F.R. § 3500.14(b). RESPA and Regulation X contain the following exemption, however:

> Nothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed....

12 U.S.C. § 2607(c)(2) ("the goods and services exemption"); see also 24 C.F.R. § 3500.14(g)(1)(iv). Analyzing these provisions, the Eleventh Circuit in *Culpepper I* determined that, where a payment is made from a lender to a broker, three questions must be asked to determine whether RESPA is violated by said payment. The first inquiry is "whether the yield spread premium [is] a referral fee." 132 F.3d at 695. If there is a referral fee, the second inquiry is whether such "payment falls within one of the exceptions listed in § 2607(c)." *Id.* at 696. At issue here is the goods and services exemption—thus the relevant inquiry is whether the payment was "tied to" the quantity or quality of the services provided.[4] *Id.* at 697; see also *Culpepper II*, 144 F.3d at 718 (noting that "one problem for [the defendant in *Culpepper I*] was that the evidence devel-

oped to date did not tie the yield spread premium to services provided by [the broker] for [defendant] or [plaintiffs]"). If the payment is tied to services, then the third inquiry is "whether the payment is so excessive that the excess should be characterized as a referral fee." *Culpepper I*, 132 F.3d at 697 ("the reasonableness inquiry").

Subsequent to and predicated upon the *Culpepper* decisions, at least one court in the Northern District of Alabama determined that class certification for a RESPA claim pursuant to 12 U.S.C. § 2607 could be proper under certain circumstances. See *Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660 (N.D.Ala.1999). In *Dujanovic*, the court considered evidence that "indicates that it is at least possible that plaintiff can prove that the defendant violated RESPA in all the transactions involving class members without necessitating any examination of the services rendered by each broker in each instance." *Id.* at 665–66. The court determined that such evidence made the case viable for class certification. *Id.* at 669–70. While not disputing that the reasonableness inquiry would entail an assessment of individualized evidence, the court determined that the issue of whether a yield spread premium was tied to services provided could be made with generalized evidence. *Id.* at 669 (stating that, "[i]f the evidence suggests to a factfinder ... that the payment has no connection whatsoever to actual goods and services rendered by the broker, it is not necessary to determine whether the payment was reasonable"). Therefore, the court determined that class certification was appropriate to determine whether services were provided:

> This court is not persuaded that individual inquiries will be required in this case and finds more persuasive the reasoning of courts that have determined that class certification was appropriate where plaintiff asserted, as in this case, that the yield spread premium paid to the broker by the lender did not represent payment for goods or services at all and, thereby, vio-

---

4. Because the *Culpepper I* court determined that the payment was not in exchange for goods, it focused solely on services. 132 F.3d at 696.

lated the RESPA proscription against referral fees.

*Id.* at 671; *see also Mulligan v. Choice Mortgage Corp., USA,* No. 96–596–B, 1998 WL 1031495 (D.N.H. Sept. 30, 1998) (stating that, if plaintiff's claim that defendant violated RESPA by failing to provide any legitimate goods or services in exchange for the payment it received "can be proved at trial through evidence common to the entire class, [then] it will not be necessary to conduct a case-by-case inquiry of the reasonableness of any particular [payment] as the trier of fact will already have determined that [defendant] failed to render any compensable goods or services in exchange for the [payment] it received").

After the *Culpepper* decisions were entered, HUD issued a policy statement on March 1, 1999. *See* Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers, 64 Fed.Reg. 10080 (1999) ("Policy Statement"). The Policy Statement recognizes that, in determining whether a referral payment violates RESPA, "the threshold question is whether there were goods or facilities actually furnished or services actually performed for the total compensation paid to the mortgage broker." *Id.* at 10085. Thus, the issue now before the court is whether common questions of law or fact concerning whether goods were actually furnished or services actually performed predominate over any individualized questions.[5]

In the instant action, Plaintiff attempts to demonstrate via generalized evidence that no goods or services were actually furnished or performed. Specifically, Plaintiff proffers as common evidence broker agreements, rate

sheets, and HUD–1 and HUD–1A forms. (Pl.'s Memo. at 4–6.) Plaintiff claims that "there is no need to review whether certain services were provided because each class member's HUD–1 form shows that no additional fee was due the broker for *any* good, facility or service, and no credit was given the borrower *for the premium fee paid by* the lender on the borrower's behalf." (Pl.'s Supp. Reply at 7–8 (emphasis in original).)

The court is not persuaded that this common evidence obviates the need for an individual case-by-case assessment. First, Plaintiff's argument concerning the HUD–1 forms assumes that the court's inquiry is limited to information contained in the HUD–1. In its Order entered in the above-styled action on August 27, 1998, the court determined that "there is absolutely no evidence to indicate that the Parties intended the HUD–1 Settlement Statement to be a complete, full and final agreement." (Aug. 27, 1998 Order at 12 n. 9.) The court finds nothing new before it to indicate such intention of the Parties. Thus, the court reaffirms its previous finding and determines that the Parties may go beyond the content of the HUD–1 forms. *See Levine,* 188 F.R.D. at 330–32 (stating that, where the terms of the mortgage broker agreement were not dispositive, a fact finder could not make a determination whether services were provided based on the agreement alone).

Second, the court notes that to allow Plaintiff's claim that generalized proof is sufficient would deprive Defendant of the opportunity to offer individualized evidence in its defense. Under certain circumstances, such as where Defendant has not demonstrated the need to offer individualized evidence, this outcome may be appropriate. For instance, in *Cul-*

---

5. The court notes that at least one court has read the language of the Policy Statement concerning the goods and services exemption to mean something different from the interpretation provided in the *Culpepper* decisions. *See Levine v. North Am. Mortgage,* 188 F.R.D. 320 (D.Minn.1999). The *Levine* court stated that: "[T]he first step in the [Policy] Statement's analysis addresses simply whether any goods or services were actually furnished or performed, rather than, as under analysis suggested in *Culpepper,* whether the goods or services the broker provided can be tied directly to the payment." *Levine v. North Am. Mortgage,* 188 F.R.D. 320, 327 (D.Minn.1999).

The Policy Statement states that "the threshold question is whether there were ... services actually performed *for the total compensation paid* to the mortgage broker," 64 Fed.Reg. at 10085 (emphasis added), and *Culpepper I* addresses whether "the payment of the yield spread premium was ... tied to the quantity or quality of the services ... provided." 132 F.3d at 697. This court finds there to be no qualitative difference between the language of the Policy Statement and that of the *Culpepper* decisions and, accordingly, declines to apply the analysis proffered by the *Levine* court.

*pepper v. Inland Mortgage Corp.*, No. CV 96–BU–0917–S, slip op. (N.D.Ala. June 22, 1999) ("*Culpepper III*"), the court determined that the defendant's proof that the yield spread premium was tied to services provided by brokers would "be of a general nature, such as memoranda dictating that the amount of yield spread premiums paid is to be increased or decreased based upon the services provided and will not be fact specific." *Id.* Thus, the court concluded that "[t]he class meets both the typicality and predominance requirements of Rule 23." *Id.*

Under other circumstances, however, such generalized proof is not adequate so as to prevent a defendant from suffering an unfair deprivation. For instance, in *Richter v. Banc One Mortgage Corp.*, No. CIV 97–2195, slip op. (D.Ariz. Mar. 17, 1999), the court made the following finding:

> [E]ven if the Purchase Agreement and portions of [deposition] testimony provide some evidence that [defendant] did not pay the yield spread premiums in return for services performed by the broker, such evidence would not foreclose [defendant] from offering its own evidence that in an individual case the borrower and broker did not intend for the borrower to pay all of the broker's compensation, but rather intended a combination of payments from both the borrower and the mortgage lender, [defendant.]

*Id.* at 19. Further, in *Levine*, the court refused to limit the inquiry to generalized evidence where "the [p]laintiff has not shown that the issue of whether a broker (who received a yield spread premium from [the defendant]) failed to provide services is subject to generalized proof." 188 F.R.D. at 331; *see also Brancheau II*, 187 F.R.D. at 594.

Here, Defendant claims to provide the following proof:

> [E]vidence which demonstrates that Countrywide intended and expected the premiums to be used to pay for broker's ser-

vices, . . . and that how the brokers used the premiums, and what conversations they had with their borrowers as to the use of such premiums, varied across the thousands of broker/borrower relationships at issue.

(Def.'s Resp. at 4.)[6] Defendant offers this evidence to challenge both whether any premium payment was a referral fee and whether same was paid for goods provided or services rendered. (*Id.* at 9.)

The court finds that, based on the facts of this action, Defendant offers individualized evidence, and that Plaintiff fails to demonstrate why such individualized evidence should not be allowed for Defendant's defense. Specifically, the court determines that the evidence at issue here is qualitatively different from that in *Dujanovic*, where the court determined that "it is at least possible that plaintiff can prove that the defendant violated RESPA in all the transactions involving class members without necessitating any examination of the services rendered by each broker in each instance." 185 F.R.D. at 665. Here, Plaintiff provides no viable argument for precluding Defendant from presenting individualized evidence, and the court finds Plaintiff's proffer of agreements, rate sheets, and HUD forms insufficient as a basis for depriving Defendant of such opportunity. Thus, the court finds that here, as in *Levine*, "Plaintiff has not shown that the issue of whether a broker . . . failed to provide services is subject to generalized proof" without consideration of Defendant's offer of individualized evidence. 188 F.R.D. at 331; *see also Taylor*, 181 F.R.D. at 523 (stating that, "[n]o matter what Plaintiffs can easily prove about the general contours of these transactions, Plaintiffs still cannot prove (by a class method) that none of the yield spread premiums at issue were earned through the provision of services. The Defendant might prove—maybe just in a single transaction, but perhaps in all of the transactions—that the yield spread premium 'represented additional payment for [the broker's]

6. Defendant also proffers evidence concerning the manner in which the brokers actually used the premiums, but the court declines to consider such evidence because "[i]t is the purpose of the payment, not the subsequent use of that payment,

that is the object of the anti-kickback provision of RESPA." *Culpepper v. Inland Mortgage Corp.*, No. CV 96–BU–0917–S, slip. op. at 7 (N.D.Ala. July 20, 1999) ("*Culpepper IV*").

services to' the lender and the borrowers" (internal citation omitted)); *Brancheau II,* 187 F.R.D. at 593. Accordingly, the court finds that Defendant should be permitted to utilize such individualized evidence in its defense to Plaintiff's claims that no services were rendered in exchange for payment of yield service premiums.

Based on the facts of and the evidence proffered in the above-styled action, the court finds that Plaintiff fails to satisfy the predominance requirement of Rule 23(b)(3). Accordingly, the court finds that Plaintiff's Renewed Motion For Class Certification is due to be denied.