[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15308

_____

D. C. Docket No. 04-02799 CV-2-VEH

VICKI V. BUSBY, individually and on
behalf of all others similarly situated,

Plaintiff-Appellant,

versus

JRHBW REALTY, INC., doing
business as Realty South,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 17, 2008)**

Before EDMONDSON, Chief Judge, HULL, Circuit Judge, and FORRESTER,[*]
District Judge.

_____

[*]Honorable J. Owen Forrester, United States District Judge for the Northern District of
Georgia, sitting by designation.

FORRESTER, District Judge:

This matter is before this Court on Plaintiff Vicki V. Busby's ("Busby") appeal of the district court's denial of class certification to a class of plaintiffs seeking damages arising out of Defendant JRHBW Realty, Inc.'s, d/b/a RealtySouth ("RealtySouth"), alleged violation of Section 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.* We accepted jurisdiction over this appeal pursuant to Federal Rule Civil Procedure 23(f). We review a district court's denial of class certification for abuse of discretion. *See generally Cooper v. Southern Co.*, 390 F.3d 695, 711 (11th Cir. 2004).[1] "Even if we would have certified a class, that does not mean the district court abused its discretion in declining to do so." *Id.* However, for a district court to apply the wrong legal standard is an abuse of discretion. *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1258 (11th Cir. 2002). We reverse the district court's denial of class certification for the reasons explained herein.

---

[1]The Supreme Court clarified aspects of *Cooper* in *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006), on unrelated grounds.

## I. Background

### A. Facts

On May 26, 2004, Busby, the putative class representative, purchased a home in Jefferson, Alabama, using a federally related home loan. Busby employed a RealtySouth real estate agent who earned a sales commission based on a percentage of the purchase price. This brokerage commission, paid by the seller, was lowered from 3% to 2.5% in order to encourage the seller to accept Busby's offer. During the closing and settlement, RealtySouth charged Busby an Administrative Brokerage Commission fee of $149 (the "ABC Fee"). The closing attorney is Ms. Busby's current counsel. He explained the closing documents and the HUD-1 statements[2] to Busby and engaged in discussions with her concerning the transactions.

### B. Procedural History

On September 23, 2004, Busby filed suit on behalf of herself and all others similarly situated against RealtySouth alleging violations of RESPA. Busby contended that the ABC Fee violated RESPA in that it was a fee for which no service was performed. In her class action Busby sought to represent:

---

[2]The Housing and Urban Development-1 ("HUD-1") statement is a settlement form used in closing a property sale; it details the costs and fees associated with a mortgage loan. *See United States v. Gaudin*, 515 U.S. 506, 508, 115 S. Ct. 2310, 2312 (1995); *Briggs v. Countrywide Funding Corp.*, 188 F.R.D. 645, 646 (M.D. Ala. 1999).

All individuals (expressly excluding the federal judiciary and the judiciary's immediate family members for the Northern District of Alabama), whether or not having any relationship with Defendant, who have paid an "ABC Fee" to Defendant pursuant to a federally related mortgage loan during the applicable limitations period whose transactions are covered and protected by RESPA regulations.

Pl. Comp. at ¶ 12.

On October 21, 2004, RealtySouth filed a motion to dismiss the complaint in its entirety. The district court granted the motion to dismiss except to the extent that the complaint alleged that the ABC Fee was a charge for which no service had been rendered under § 8(b). On April 10, 2005, RealtySouth filed a motion for summary judgment on the remaining claim. The motion was grounded on the assertion that there were no facts to support Busby's contention that no service was rendered in exchange for the ABC Fee. The district court denied RealtySouth's motion, finding that there was an issue of material fact regarding whether any services were provided in exchange for the ABC Fee, and RealtySouth does not appeal that order. Busby then filed a motion for class certification, which the district court denied on July 20, 2006.

The district court found that Busby had demonstrated that the proposed class satisfied the numerosity, commonality, typicality, and adequacy prongs of Federal Rule of Civil Procedure 23(a). Nonetheless, the district court found that Busby had not satisfied Federal Rule of Civil Procedure 23(b)(3). Specifically, the

4

court found that while the legal issues of Busby's RESPA claim were identical to those that would be presented by each class member, individual issues predominated with regard to factual issues. Busby appeals the denial of class certification.

## II.    Discussion

### A.    RESPA Background

In 1974, Congress passed RESPA to regulate the costs consumers pay to settle their real estate transactions. The statute states:

> The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a).

"One of the abusive practices that Congress sought to eliminate through the enactment of RESPA was the payment of referral fees, kickbacks, and other unearned fees." *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981 (11th Cir. 2003) (citing S. Rep. No. 93-866 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6546, 6551). Congress addressed both kickbacks and unearned fees in Section 8 of RESPA, which provides in pertinent part:

(a) Business referrals.  No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) Splitting Charges.  No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607.

While we have never addressed class treatment for a claim under Section 8(b) where a plaintiff alleges no services were provided (as Busby alleges here), we have addressed the viability of class treatment with respect to a RESPA claim under § 8(a) challenging Yield Spread Premiums ("YSPs").  *See Heimmermann v. First Union Mort. Corp.*, 305 F.3d 1257, 1264 (11th Cir. 2002).

The term "Yield Spread Premium" is used in the mortgage lending industry to refer to a type of payment from a lender to a mortgage broker paid in the context of brokered loan transactions.  The premium is a form of compensation that a mortgage broker, acting as the intermediary, receives from the original lender for selling an interest rate to a borrower that is above the lender's par rate for which the borrower qualifies.  The borrower accepts this higher rate on the loan in return for paying the broker a reduced origination fee or no fee at all.

6

Essentially, it is a tool by which a borrower may spread the origination fee over the life of the loan.

In 2001, the Department of Housing and Urban Development ("HUD") issued a Statement of Policy ("SOP") emphasizing that a YSP can be a "useful means to pay some or all of a borrower's settlement costs" as well as "a legitimate tool to assist the borrower." 2001 SOP, 66 Fed. Reg. 53052, 53054 (Oct. 18, 2001).[3] HUD then set forth a two-part test to determine the legality of a YSP. We adopted this test in *Heimmermann*. The district court relied heavily on our analysis of YSPs in *Heimmermann* in its denial of Busby's motion for class certification, and, thus, we review *Heimmermann* and the 2001 SOP.

Under the two-part YSP test, we first "determine whether the broker has provided goods or services of the kind typically associated with a mortgage transaction." *Heimmermann,* 305 F.3d at 1263. Once we have determined that the broker did actually provide services, we consider "whether the total compensation paid to the broker is reasonably related to the total value of the goods or services actually provided." *Id.* at 1264. HUD cautioned that YSPs must be evaluated on a case-by-case basis in the context of "the specific factual circumstances applicable

---

[3]Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53,052 (Oct. 18, 2001) (codified at 24 C.F.R. Pt. 3500).

to each transaction." 2001 SOP, 66 Fed. Reg. at 53054. For this reason, in *Heimmermann* and since, we have consistently held that YSP cases are inappropriate for class review. *Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1276 (11th Cir. 2007) ("*Culpepper IV*"); *Heimmermann,* 305 F.3d at 1264.

However, the 2001 SOP lays out a different framework for § 8(b) claims. Specifically, as to § 8(b)'s prohibition on unearned fees, the 2001 SOP states:

> Payments that are unearned fees occur in, but are not limited to, cases where: . . . (3) one settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done, *or* the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.

2001 SOP, 66 Fed. Reg. at 53053 (emphasis added). In other words, the 2001 SOP states that a fee is unearned in violation of § 8(b) when: (1) a fee is charged but "no, nominal, or duplicative work is done" in exchange for the fee; *or* (2) a fee is charged that is unreasonably excessive in light of the services actually performed in exchange for the fee.

### B. Class Certification

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements

8

set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).[4]

Federal Rule of Civil Procedure 23(a) states:

**Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, Federal Rule of Civil Procedure 23(b) states:

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(3) the court finds that the questions of law or fact common to the members of the class **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

---

[4]The parties do not dispute that Busby has standing to bring this claim.

9

Fed. R. Civ. P. 23(b)(3) (emphasis added). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003).

On appeal, Busby challenges the district court's holding that she failed to satisfy Rule 23(b)(3)'s predominance requirement, as well as the district court's alternative holding that she failed to satisfy Rule 23(b)(3)'s superiority requirement. RealtySouth not only contests Busby's claim that she satisfies the predominance and superiority requirements of Rule 23(b)(3), but further argues that we should affirm the district court on various alternative grounds that RealtySouth asserts are supported by the record. Specifically, RealtySouth contends that Busby does not meet the requirements of Rule 23(a)(3) and (4), and further contends that § 8(c)(2) of RESPA provides a defense that should apply individually to putative plaintiffs, such that class treatment is inappropriate.

We first address the requirements of Rule 23(a)(3) and (4) and explain why the district court correctly determined that Busby met those requirements. We then explain why the district court erred in determining that Busby could not satisfy the predominance and superiority requirements of Rule 23(b)(3). Finally, we explain why we reject RealtySouth's § 8(c)(2) argument.

## 1.    Rule 23(a)

First, as to Rule 23(a)(3) typicality, RealtySouth contends that Busby does not have a typical claim because she seeks to represent both buyers and sellers who paid the ABC Fee.  RealtySouth contends that sellers received a different set of services than buyers and paid different amounts for these services.  Further, RealtySouth contends that Busby is atypical because she is more likely subject to an estoppel or related defense than other buyers or sellers as a result of negotiations during her closing resulting in the lowering of her brokerage commission from 3% to 2.5%.

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)).  "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).

Here, as noted by the district court, there is an issue of law common to all of the putative representatives:  whether the ABC Fees violated RESPA § 8(b) because no services were provided, either to sellers or buyers, for whatever ABC

Fee was paid. This claim is common to all possible plaintiffs including Busby. RealtySouth has not enumerated any services that were provided to either sellers or buyers in exchange for the ABC Fee. Therefore, we find, as did the district court, that Busby's claim is typical of all possible plaintiffs including sellers as well as buyers like Busby.[5]

Second, as to Rule 23(a)(4) adequacy, RealtySouth contends that the district court erred in finding that Busby was an adequate representative of the class. The adequacy-of-representation requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug,* 350 F.3d at 1189 (quotations omitted).

RealtySouth contends that Busby's counsel improperly solicited Busby in violation of Alabama Rules of Professional Conduct Rule 7.3, and that this renders Busby inadequate to represent the class. Rule 7.3 states:

> A lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no familial or current or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit on the lawyer's behalf. A lawyer shall not enter into an agreement for or

---

[5]We address RealtySouth's estoppel defense in conjunction with our Rule 23(b)(3) analysis, *infra*.

charge or collect a fee for professional employment obtained in violation of this rule. The term "solicit" includes contact in person, by telephone . . . .

Ala. Rules of Prof. Conduct Rule 7.3(a).

The district court noted that Busby's counsel was the closing attorney involved in the business transactions pertaining to the purchase of her house. In this capacity, "he explained the closing documents and the HUD-1 statements to Busby and engaged in discussions concerning the transactions." The district court found this interaction sufficient to constitute a prior professional relationship satisfying Rule 7.3.

RealtySouth has not cited to any Alabama precedent that defines what constitutes a prior professional relationship with regard to Rule 7.3, and this Court found none. We conclude that the district court did not abuse its discretion in finding that the former relationship between Busby and her counsel constituted a prior professional relationship in satisfaction of Rule 7.3.

Moreover, even had it found that Busby's counsel's conduct violated Rule 7.3, the district court was not then required to find Busby inadequate to represent the class. In a Seventh Circuit case cited by RealtySouth, addressing the question of attorney misconduct in soliciting named plaintiffs in a class action, the court stated, "[o]nly the most egregious misconduct on the part of plaintiffs' lawyer

could ever arguably justify denial of class status." *Halverson v. Convenient Food Mart, Inc.,* 458 F.2d 927, 932 (7th Cir. 1972) (citing *Flaska v. Little River Marine Constr. Co.*, 389 F.2d 885 (5th Cir. 1968)).  In the event that class counsel does act improperly, "[t]he ordinary remedy is disciplinary action against the lawyer and remedial notice to class members," not denial of class certification.  *Id.*

Considering the ambiguity of the statute, Busby's counsel's violation, if any, cannot be considered a major violation as Busby's counsel could have reasonably believed that he had a prior professional relationship with Busby. Therefore, we conclude that the district court did not abuse its discretion in finding that Busby was an adequate representative of the proposed class.  We affirm the district court's determination that Busby satisfied the four elements of Rule 23(a).

### 2. Rule 23(b)(3)

Busby challenges the district court's determination that she failed to satisfy the predominance and superiority requirements of Rule 23(b)(3).

### a. Predominance

"Under Rule 23(b)(3), it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254 (internal citations and quotations omitted).

14

Here, the district court found that while the legal issues were the same for each putative plaintiff, the determination of liability would require individual analyses of the reasonableness of the charge for services provided, rendering class treatment inappropriate.  The district court reached this conclusion based on HUD's 2001 SOP and case law, such as *Heimmermann*, which addressed YSPs under RESPA § 8(a).

The district court concluded that like YSP cases, the required test for whether the payment "violates RESPA turns on whether the total compensation received (here by RealtySouth in the form of the ABC Fee from Busby and the 2.5% commission from [the seller]) would be commensurate with the services provided in the transaction."  Because the district court concluded it would be required to perform an individualized analysis like the analysis in YSP cases in order to make this comparison, the district court found the case unfit for class treatment for the same reasons it is inappropriate in YSP cases.

We conclude that the district court applied the wrong legal standard by analyzing Busby's claim under YSP logic.  As stated above, the 2001 SOP, addressing RESPA § 8(b) prohibition of unearned fees, allows for *two types* of violations: first, where a settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done, 2001 SOP, 66 Fed. Reg. at 53057;

15

and second, where the fee charged is in excess of the reasonable value of goods or facilities provided or the services actually performed. It is this second part of the 2001 SOP which is analogous to YSP analysis, but Busby brings a claim under the first. Busby does not argue that the ABC Fee is unreasonable; rather, she contends that no services were provided for the ABC Fee. At oral argument, Busby explicitly stated several times that if RealtySouth proves that it provided *any* service in exchange for the $149 ABC Fee, Busby's claim will fail. Thus, the district court will not need to make any reasonableness determinations akin to those in an overcharge case. Rather, a simple binary determination of "any services" or "no services" is all that need be done.

We observe that both the Second and Third Circuits have rejected the 2001 SOP's position that § 8(b) allows a cause of action for unreasonable overcharges. *See, e.g.*, *Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384, 387 (3d Cir. 2005) ("[T]he plain language of section 8(b) does not provide for a cause of action for overcharges."); *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 55-57 (2d Cir. 2004). Moreover, in rejecting a reasonableness framework for § 8(b) claims, the Second Circuit in *Kruse* pointed out that "Section 8(b) *does prohibit* the 'giv[ing] and . . . accept[ing of] any . . . [covered] charge made or received . . . other than for services actually performed.'" *Kruse*, 383 F.3d at 56 (emphasis

16

added) (alteration in original). Thus, both the Second and Third Circuits have indicated that a YSP-type reasonableness analysis of § 8(b) claims is inappropriate.[6]

To support its contrary finding – that a claim under § 8(b) actually *should* be analyzed under a YSP-type reasonableness standard – the district court relied substantially on *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003). In *O'Sullivan*, the named plaintiffs in two different class actions (consolidated for appeal) sued Countrywide, a mortgage broker, over a specific fee. In each case, Countrywide prepared a set of closing documents for each loan. Consistent with state law, Countrywide used attorneys to prepare these documents for its wholesale and retail loan operations. At closing, both the plaintiffs paid document preparation fees that appeared as a direct payment to the law firms on their HUD-1 statements. A portion of that fee paid to the law firms then was

---

[6]Notably, in its motion to dismiss, RealtySouth cited *Kruse* and actually argued that there is no cognizable claim under § 8(b) for (unreasonable) overcharges. The district court adopted this argument in its order on RealtySouth's motion to dismiss, and stated that "to the extent that these charges are an overcharge for services that actually were performed, the motion to dismiss will be GRANTED."

Busby does not appeal the district court's grant of RealtySouth's motion to dismiss as to any overcharge claim under § 8(b), and accordingly, we need not decide the question of whether or not *Kruse* and *Santiago* properly rejected the 2001 SOP's position that a § 8(b) claim can be premised on unreasonable overcharges. We simply note that *Kruse* and *Santiago* to some extent support Busby's argument that it is inappropriate to apply a reasonableness standard to her § 8(b) claim that a fee was charged but no services were actually performed.

reimbursed to Countrywide. In *O'Sullivan*, the plaintiffs contended that this fee splitting constituted a "kickback" or "referral fee" in violation of RESPA § 8(a)-(b) because while Countrywide had performed "some service," the reimbursements made for those services did not represent the reasonable value. The plaintiffs in both cases sought, and prevailed, in having the court grant class certification.

The *O'Sullivan* court concluded that the district courts erred in granting class certification. Relying on YSP logic, the Fifth Circuit decided that determination of reasonableness must be made on a case-by-case basis, and thus individual issues predominated and class certification was improper.

We conclude that *O'Sullivan* is materially distinguishable from this case. The challenged payments in *O'Sullivan* were much more analogous to YSPs than the fees challenged here because, again, Busby claims that *no services at all* were provided in return for the ABC Fee. If RealtySouth provided any services for the ABC Fee, then, as Busby's counsel made abundantly clear at oral argument, the class action cannot continue. However, that question – whether RealtySouth did or did not provide "any services" in exchange for the ABC Fee – is a binary and predominant issue here. We conclude, therefore, that this matter is suited for class review. The district court applied the wrong legal standard by engaging in a YSP-

type reasonableness analysis for Busby's § 8(b) claim, and as such, the district court abused its discretion in finding that individual issues predominate and that class treatment was precluded.[7]

### b.  Superiority

Having found that common issues predominate, we turn to "the second prong of the Rule 23(b)(3) test – that 'a class action is superior to other available methods for the fair and efficient adjudication of the [claims].'" *Klay*, 382 F.3d at 1269.

In addressing the superiority element of its Rule 23(b)(3) analysis, the district court without explanation simply stated:  The "Court acknowledges the necessity of individualized analysis pertaining to the reasonableness of the compensation received by RealtySouth, coupled with the existence of numerous individual defenses under the estoppel doctrine.  These issues make individual suits or claims, not class suits, the superior way to resolve this dispute."

---

[7]Although we recently stated in *Culpepper IV* that "our sister circuits have concluded that class certification is inappropriate in section 8 RESPA cases, in light of HUD's 2001 SOP expressly urging an individualized assessment of compensatory payments to brokers," this comment was not central to our holding.  *See Culpepper IV*, 491 F.3d at 1276 (citing, *inter alia*, *O'Sullivan*, 319 F.3d at 741-42).  More importantly, *Culpepper IV* involved a § 8(a) RESPA claim arising out of YSPs, not a § 8(b) claim arising out of a fee that was allegedly charged in exchange for no services whatsoever.

RealtySouth argues that the district court's superiority ruling was correct because some of its customers, including Busby, negotiated a lower percentage commission in exchange for their agreement to pay the ABC Fee. According to RealtySouth, the district court correctly determined that individual suits are the superior method of resolving this case because these customers' lower, negotiated commissions give RealtySouth individualized estoppel defenses against such customers. We disagree.

> The elements of equitable estoppel, as defined by federal common law, are: (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*National Cos. Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir. 1991), *abrogated on other grounds, Geissal v. Moore Med. Corp.,* 524 U.S. 74 (1998).

Under this analysis, if the ABC Fee was in fact a violation of RESPA § 8(b), RealtySouth is not entitled to a defense of equitable estoppel. First, RealtySouth has not provided any evidence nor even contended that any of the potential class members knew the allegedly true facts regarding the ABC Fee (namely, that it was

20

charged, but no services were provided).  Nor does RealtySouth aver that any class member, armed with this knowledge, then misrepresented that he would pay the fee in exchange for a lower commission while conspiring to bring a claim that the fee was a RESPA violation.  As stated in *Sosa*, "[a]bsent any connivance . . . a consumer would always pay a fee to a settlement service provider intending that it be used for a service actually performed."  348 F.3d at 983.  Here, RealtySouth has failed either to provide any evidence of, or even argue, any "connivance" on the part of Busby or the putative plaintiffs.  Thus, equitable estoppel is inapplicable.

Further, if the ABC Fee is actually a RESPA violation, RealtySouth could not reasonably contend that by entering into their contracts, the putative class members were waiving a claim for such violation.  RealtySouth has not proffered, and we are unaware of, any case law by which a plaintiff can waive a right to bring a claim that a contract violated RESPA simply by accepting a benefit under the contract.  For these reasons, we conclude that it is highly unlikely that Busby or any other putative plaintiff will be subject to individualized defenses of equitable estoppel justifying denial of class certification.

For the same reasons stated in our predominance review, coupled with the weakness of any estoppel defense, we conclude that the district court abused its

discretion in finding that individualized issues make individual suits the superior way of addressing Busby's claims.

### 3. RESPA § 8(c)(2)

Finally, RealtySouth contends that § 8(c)(2) of RESPA provides a defense that applies individually to putative plaintiffs and thus Busby's claim is not suitable for class treatment. Section 8(c)(2) provides that "[n]othing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed . . . ." 12 U.S.C. § 2607(c).

In *Culpepper v. Irwin Mortgage Corp.*, 253 F.3d 1324, 1330 (11th Cir. 2001) ("*Culpepper III*"), *overruled on other grounds by Heimmermann*, 305 F.3d 1257, we stated that "everything about § 8(c) suggests that it is an interpretive gloss on § 8(a) rather than a list of exemptions bestowed upon otherwise illegal conduct." Under the logic of *Culpepper III*, § 8(c)(2) does not provide a "defense" to claims brought under either § 8(a) or § 8(b).

Regardless, we need not reach the question. Even if § 8(c)(2) provides some sort of defense to claims under § 8(b), the result is still the same because under either § 8(b) or § 8(c)(2), the issue is whether any services were provided

for the ABC Fee.  Therefore, the Court concludes that § 8(c)(2) of RESPA does not require any individualized analysis.

## III.    Conclusion

We hold that the district court did not abuse its discretion in finding that Busby and the putative class met each of the requirements specified in Federal Rule of Civil Procedure 23(a).

With regard to the district court's analysis of Federal Rule of Civil Procedure 23(b)(3), however, we hold that the district court applied the wrong legal standard in finding this RESPA § 8(b) case analogous to YSP cases brought under RESPA § 8(a).  In our view, the proposed class satisfies Federal Rule of Civil Procedure 23(b)(3), because class issues predominate and a class action is the superior method for dealing with the claims raised.  Therefore, we REVERSE the district court's denial of class certification and REMAND for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANDED.**