Kenneth SPINELLI, et al., Plaintiffs,

v.

CAPITAL ONE BANK, et al., Defendants.

No. 8:08–cv–132–T–33EAJ.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 18, 2009.

Order Denying Reconsideration
March 4, 2010.

Kevin M. McLaughlin, Wagner, Vaughan & McLaughlin, P.A., Tampa, FL, Marcus N. Bozeman, T. Brent Walker, Carney Williams Bates Bozeman & Pulliam, PLLC, Steven A. Owings, Owings Law Firm, Little Rock, AR, for Plaintiffs.

Eric S. Adams, Shutts & Bowen, LLP, Tampa, FL, Gregory P. Dresser, Karen Kreuzkamp, Morrison & Foerster, LLP, San Francisco, CA, for Defendants.

## ORDER

VIRGINIA M. HERNANDEZ COVINGTON, District Judge.

This cause is before the Court pursuant to the report and recommendation of Elizabeth A. Jenkins, United States Magistrate Judge (Doc. # 96), in which Judge Jenkins recommends that Plaintiffs' amended motion for class certification (Doc. # 55) be granted in part. On September 3, 2009, Defendants filed objections to Judge Jenkins' report and recommendation, and such objections are ripe for this Court's review. (Doc. ## 97, 100).

For the reasons that follow, this Court adopts Judge Jenkins' report and recommendation and will allow this case to proceed as a class action.

## I. *Background*

Plaintiffs filed a second amended class action complaint against Defendants on February 28, 2008. (Doc. # 16).[1] Plaintiffs are comprised of a proposed class and sub-class of Defendants' current and former customers who were solicited to participate in Defendants' Payment Protection program.[2]

Plaintiffs characterized the Payment Protection program as "virtually worthless because of the numerous restrictions that are imposed after the consumer accepts or receives the product, and because of the admin-

istrative and bureaucratic hurdles that are placed in the way of the Florida consumer who attempts to secure payments from Capital One under this coverage." (Doc. # 16 at ¶ 24). Plaintiffs explain: "This product is sold to Florida consumers without any consideration for the circumstances or any reasonable investigation into facts that may cause the product to be worthless to the consumer. For instance, many Florida senior citizens and retired persons are charged for this product although they are categorically excluded from Payment Protection payments . . ." (Doc. # 16 at ¶ 25).

Among other things, Plaintiffs contend that Defendants' solicitation of Plaintiffs' participation in the Payment Protection program was in violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. §§ 501.201, et seq.

On October 30, 2008, Plaintiffs filed their motion for class certification (Doc. ## 32, 33) and Defendants filed a response in opposition (Doc. # 35) on November 13, 2008. Plaintiffs filed a reply (Doc. # 40), and Defendants filed a sur-reply (Doc. # 41).

This Court referred the class certification motion to Judge Jenkins for the issuance of a report and recommendation, and on December 16, 2008, Judge Jenkins filed her report and recommendation (Doc. # 43). In her report and recommendation, Judge Jenkins determined, among other things, that Plaintiffs satisfied Rule 23(a)'s numerosity, commonality, and typicality requirements. However, Judge Jenkins determined that Plaintiffs failed to satisfy Rule 23(a)'s adequacy requirement. Judge Jenkins recommended that Plaintiffs be permitted to present additional evidence and briefing on the issue of adequacy.

On January 30, 2009, Plaintiffs filed the amended motion for class certification ad-

---

1. Defendants removed the case from state court on January 18, 2008, asserting diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). (Doc. # 1).

2. As stated by Plaintiffs, "Payment Protection is represented to the consumer to be a Capital One product that will pay minimum payments on credit cards under certain circumstances for a limited period of time, and thereby 'protect' the consumer's credit by insuring that timely payments are made on account balances so that the consumer does not sustain additional fees, charges and penalties on credit card balances or adverse credit reporting to the credit bureaus." (Doc. # 16 at ¶ 4).

dressing the areas previously found to be deficient by Judge Jenkins. (Doc.## 55, 56). On April 10, 2009, Defendants filed a response in opposition to the amended motion for class certification (Doc. # 66), and on April 20, 2009, this Court referred the amended motion for class certification to Judge Jenkins for the issuance of a second report and recommendation. (Doc. # 70). Judge Jenkins' report and recommendation, in which she recommends that the amended motion for class certification be granted in part (Doc. # 96), as well as Defendants' ripe objection to the report and recommendation, are before the Court.

## II. Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982), *cert. denied*, 459 U.S. 1112, 103 S.Ct. 744, 74 L.Ed.2d 964 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings de novo, *Garvey v. Vaughn*, 993 F.2d 776, 779 n. 9 (11th Cir.1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(c). The district judge reviews legal conclusions de novo, even in the absence of an objection. *See Cooper–Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir.1994); *Castro Bobadilla v. Reno*, 826 F.Supp. 1428, 1431–32 (S.D.Fla.1993), *aff'd*, 28 F.3d 116 (11th Cir.1994).

## III. The Report and Recommendation

Having previously determined that Plaintiffs have satisfied Rule 23(a)' s numerosity, commonality, and typicality requirements, Judge Jenkins, in the present report and recommendation, analyzes whether Plaintiffs satisfy Rule 23(a)'s adequacy requirement.

In addition, pursuant to Rule 23(b)(3), she examines whether, "common questions of law or fact predominate over questions affecting only individual class members ('predominance')" and whether "a class action is superior to other available methods for adjudicat-ing the controversy ('superiority')." *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir.2009).

### A. Adequacy of Class Representative and Counsel

■ A class may be certified only if the representative parties will fairly and adequately protect the interests of the class. (citations omitted). "The adequacy of representation requirement encompasses two separate inquires: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW, Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir.2008). Judge Jenkins examined the proposed class representatives (Kenneth Spinelli, Janice Scott, and Heather Sprague) and determined that only Spinelli qualifies as an adequate class representative.

In addition, Judge Jenkins determined that class counsel were adequate.

### B. Predominance and Superiority

As explained in *Amchem Prods. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), "To qualify for certification under Rule 23(b)(3), a class must meet two requisites beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." (Internal citations omitted).

Judge Jenkins determined that the requirement of predominance is met because the common question of whether Defendants' Payment Protection program had any value predominates over any other issue.

As to superiority, Judge Jenkins evaluated the factors enumerated in *Williams v. Mohawk Indus. Inc.*, 568 F.3d 1350, 1358 (11th Cir.2009):

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) The likely difficulties in managing a class action.

Judge Jenkins determined that "Plaintiffs have shown that 'it would be better to handle this case as a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly.' " (Doc. # 96 at 15) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004)).

Thus, Judge Jenkins recommended that this case should be certified as a class action.

## IV. *Objections*

Defendants object to Judge Jenkins' analysis of Spinelli as class representative. Defendants contend that Judge Jenkins did not perform a vigorous analysis of his qualifications. Defendants further contend that class counsel are not adequate due to their association with another attorney who has pleaded guilty to criminal charges stemming from his misappropriation of settlement money. Defendants also focus on faulty affidavits class counsel submitted to the Court in these proceedings. In addition, Defendants object to Judge Jenkins' predominance and superiority findings. Last, Defendants argue that Judge Jenkins erred by failing to close the class period as of March 1, 2008, when Capital One became a national bank.

### A. *Adequacy of Spinelli and Class Counsel*

#### 1. *Spinelli*

Defendants contend Judge Jenkins erred when she determined that Spinelli will fairly and adequately protect the interest of the class. Defendants contend that "Spinelli testified that he does not know what a class representative is, what responsibilities a class representative has, or what claims are being asserted in this case. He further testified that he has not participated in formulating case strategy, has not discussed the goals

of the litigation with counsel, and, in fact, generally communicates with counsel less than twice a year." (Doc. # 97 at 3).

■ Plaintiffs counter that Defendants have "selectively" relied upon Spinelli's deposition testimony in an effort to make him look as inadequate as possible. (Doc. # 100 at 3). Plaintiffs point to portions of Spinelli's deposition testimony demonstrating that Spinelli is knowledgeable about the Payment Protection plan and the purpose of the class action. This Court has reviewed the deposition testimony and determines, as Judge Jenkins did, that Spinelli is adequate. Spinelli is a retired senior citizen residing in Florida who purchased Payment Protection, his is not a professional plaintiff. Judge Jenkins found that Spinelli recognizes his duties to include testifying truthfully in this matter, attending depositions, and attending trial if necessary. Further, Spinelli promised to represent the class members to the best of his abilities. (Doc. # 96 at 8). At times his deposition testimony reveals some unfamiliarity with the legal system; however, this is not a sufficient basis to exclude him as a class representative. Upon due consideration, the Court finds that Spinelli is an adequate class representative under Rule 23(a)(4).

#### 2. *Counsel*

The adequacy requirement of Rule 23(a) "involves questions of ... whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation." *Pop's Pancakes, Inc. v. NuCo2*, 251 F.R.D. 677, 683 (S.D.Fla.2008) (citing *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)). Defendants contend that class counsel are inadequate because they tendered nonconforming affidavits, containing false statements, to the Court, and because "one of the law firms representing plaintiffs, until very recently, was controlled by a now admitted felon whose crime consisted of the misappropriation of class settlement funds." (Doc. # 97 at 9).

Judge Jenkins determined that class counsel is adequate. The Court adopts her recommendation after performing additional re-

view of the lawyers and firms representing the class: Brent Walker, Esq. and Hank Bates, Esq. of the firm of Carney Williams; Steven A. Owings, Esq. of the Owings Law Firm; and Kevin McLaughlin, Esq. of the firm of Wagner, Vaughan, McLaughlin & Brennan, P.A.

The attorneys have submitted exhaustive information concerning the qualifications of their firms, and the Court's review of these materials confirms that "Plaintiffs' Counsel have considerable experience in consumer class action litigation, securities, fraud class actions and complex litigation." (Doc. # 56 at 5, Ex. F, G, & H).

According to the materials tendered to the Court, Attorney Bates graduated from Harvard in 1987, and graduated from Vanderbilt University School of Law in 1992, with many honors. (Doc. # 56–7 at 9). After serving as a Federal Judicial law clerk to the Honorable Danny J. Boggs, of the United States Court of Appeals for the Sixth Circuit, Attorney Bates focused his practice on environmental defense work. He "has represented numerous individuals and entire communities . . . in complex and high-profile litigation involving air pollution, groundwater pollution and toxic exposures resulting in multi-million dollar recoveries and agreements . . . ." (Doc. # 56–7 at 9). He is also a consumer protection attorney. (*Id.*)

Attorney Walker graduated from the University of Mississippi with a Bachelor of Business Administration degree in accounting. He earned his Master's degree in business from Mississippi State University, and then graduated from the University of Arkansas with his *juris doctor.* His focus is securities fraud, and he has had significant involvement in numerous multi-million dollar settlements. (Doc. # 56–7 at 13). Attorney Owings also attended the University of Arkansas. (Doc. # 56–8). He is the founder of his law firm, and "has substantial experience in the area of class action litigation, particularly in the area of consumer fraud." (*Id.*)

Attorney McLaughlin, a graduate of Stetson University College of Law, is an AV rated attorney located in Tampa, Florida. (Doc. # 56–9).

Defendants do not appear to challenge the adequacy of any of the attorneys listed above, individually. Instead, Defendants contend (1) that a former attorney associated with the Carney Williams firm is a criminal; and (2) that problems associated with the class representatives' affidavits reveal that counsel for Plaintiffs are unskilled and careless.

#### a. *Attorney Gene Cauley*

Defendants make much of the fact that a former attorney of the Carney Williams firm, Attorney Cauley, pleaded guilty to criminal charges stemming from his misappropriation of lawsuit settlement monies. The Court would be much more concerned if Attorney Cauley were presently attempting to act as class counsel in this case. The record shows that he is, in no way, involved in the present matter. Judge Jenkins thoroughly addressed the impact of Attorney Cauley's misdeeds, and she determined that the Carney Williams firm should not be disqualified due to Attorney Cauley's conduct. The Undersigned District Judge agrees with her analysis.

#### b. *Faulty Affidavits*

Defendants point to various flaws in affidavits counsel for Plaintiffs have furnished to the Court, and Defendants assert that the faulty affidavits demonstrate that counsel for Plaintiffs are inadequate.

▆ The Court agrees with Defendants that the affidavits in question are somewhat troubling. The affidavits do not appear to comply with the technical requirements of either Florida or Federal law. In addition, it appears that there are some discrepancies between the statements in the affidavits and the deposition testimony of the affiants. Nevertheless, these problematic affidavits do not mandate disqualification of Plaintiffs' counsel.

Judge Jenkins noted that she relied on the class representatives' deposition testimony, rather than their affidavits. Counsel for Plaintiffs should review the applicable requirements for affidavits before tendering future affidavits in this case. The Court,

however, declines to disqualify class counsel on the basis of the affidavits.

Upon due consideration, the Court finds that Brent Walker, Esq. and Hank Bates, Esq. of the firm of Carney Williams; Steven A. Owings, Esq. of the Owings Law Firm; and Kevin McLaughlin, Esq. of the firm of Wagner, Vaughan, McLaughlin & Brennan, P.A. are adequate under Rule 23(a)(4). Furthermore, the Court appoints these attorneys pursuant to Rule 23(c)(1)(B) and Rule 23(g).

### B. *Predominance and Superiority*

Defendants argue that Plaintiffs have provided insufficient evidence of the predominance and superiority issues and that Judge Jenkins glossed over these issues without sufficient analysis. (Doc. # 97 at 10–12).

■ After reviewing Judge Jenkins' analysis and the parties' submissions, the Court concludes that Plaintiffs have satisfied the requirements of predominance and superiority. The Court agrees that the issue of whether the Payment Protection program was worthless predominates over individual inquires.

Furthermore, as to superiority, Defendants stated in response to discovery that 352,376 Florida consumers were enrolled in Payment Protection. (Doc. # 32 at 6). It would not be feasible for this Court to entertain hundreds of thousands of individual suits against Defendants all focused on Payment Protection. In addition, the Court agrees with Judge Jenkins' finding that "there is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation." (Doc. # 96 at 14).

As stated in *Amchem,* 521 U.S. at 608, 117 S.Ct. 2231, "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." The Court agrees with Plaintiffs' argument that "a reasonable cost/benefit analysis would not justify such an action for an individual litigant." (Doc. # 32 at 14). *See also* 7AA Wright, Miller and Kane, *Federal Practice & Procedure,* § 1779 at 557 ("a

group composed of consumers ... typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure.")

Upon due consideration, the Court determines that Plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b).

### C. *Class Period*

■ Last, Defendants assert that Judge Jenkins should have limited the class period to March 1, 2008, the date that Capital One became a national bank. In the report and recommendation, Judge Jenkins raised the issue of the class period, but noted that she did not address it because it was not referred to her for a report and recommendation. (Doc. # 96 at 15).

The Court has evaluated the parties' respective positions on Defendant's status as a national bank. Upon due consideration, the Court determines that the class period should end on March 1, 2008, when Capital One Bank changed its charter from that of a Virginia general purpose bank to that of a national bank named "Capital One Bank (USA), N.A." (Doc. # 85 at 1).

In *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 6, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007), the Court held, that "national banks are controlled by the National Bank Act, 12 U.S.C. § 1, et seq., and regulations promulgated thereunder by the Office of the Comptroller of the Currency (OCC). As the agency charged by Congress with supervision of the NBA, OCC oversees the operations of national banks and their interactions with customers."

Defendants correctly argue that the National Bank Act preempts state law. The Supreme Court explains that "federal control shields national banking from unduly burdensome and duplicative state regulation." *Watters,* 550 U.S. at 11, 127 S.Ct. 1559. The Court further explains:

> Diverse and duplicative superintendence of national banks' engagement in the business of baking, we observed over a century ago, is precisely what the NBA was designed to prevent: "The legislation has in

view the erection of a system extending throughout the country, and independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the States."

*Watters,* 550 U.S. at 14, 127 S.Ct. 1559 (citing *Easton v. Iowa,* 188 U.S. 220, 229, 23 S.Ct. 288, 47 L.Ed. 452 (1903)).

In the same opinion, however, the Court stated, "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters,* 550 U.S. at 11, 127 S.Ct. 1559. As an example, the *Watters* Court noted that national banks are subject to state usury laws. *Id.*

Plaintiffs contend that the FDUTPA (the basis of Plaintiffs' complaint) is a "generally applicable consumer protection law" and, therefore, is not preempted by the NBA. (Doc. # 77 at 5). Plaintiffs' arguments over simplify the issue.

Defendants' comprehensive analysis of the law of preemption and banking regulations is correct. As stated in *Fla. State Conf. of the NAACP v. Browning,* 522 F.3d 1153 (11th Cir.2008):

> Where the two conflict, federal law trumps state law; that was always clear. What constitutes a conflict is often less clear. The well-worm taxonomy of preemption doctrine identifies three categories: (1) express preemption; (2) field preemption; and (3) conflict preemption. Express preemption occurs when Congress manifests its intent to displace a state law using the text of a federal statute. Field and conflict preemption in turn have been considered under the umbrella term of "implied preemption." Field preemption occurs when a congressional legislative scheme is so pervasive as to make the reasonable inference that Congress left no room for the states to supplement it. Conflict preemption occurs either when it is physically impossible to comply with both the federal and the state law or when the state law stands as an obstacle to the objective of the federal law.

*Id* at 1167 (internal citations omitted).

Defendants' Payment Protection program is a "Debt Agreement" as defined by the OCC Regulations. *See* 12 C.F.R. § 37.2(f), (g). The National Bank Act and the OCC's implementing regulations provide that state law on the subject of Debt Agreements is subject to express preemption: such agreements are governed by 12 C.F.R. Part 37 and "applicable Federal law and regulations, and **not ... by State law.**" 12 C.F.R. § 37.1(c) (emphasis added).

In addition, the Court determines that field preemption also applies because the OCC's comprehensive scheme of regulation leaves no room for state law when it comes to Debt Agreements. Part 37 ("Debt Cancellation Contracts and Debt Suspension Agreements") authorizes national banks to enter into Debt Agreements (12 C.F.R. § 37.1); prohibits certain practices, including misrepresentation (12 C.F.R. § 37.3); provides the terms for refunds (12 C.F.R. § 37.4); mandates disclosures (12 C.F.R. § 37.6); and requires that a national bank obtain and document the customer's affirmative election to purchase the contract and the customer's receipt of the disclosures (12 C.F.R. § 37.7).

The Court agrees with Defendants that forcing national banks entering into Debt Agreements to comply with the laws of the 50 states would thwart the purpose of the OCC regulations, which are aimed at providing a "comprehensive Federal consumer protection scheme." OCC, Final Rule, 67 Fed. Reg. 58962, 58963 (Sept. 19, 2002).

Thus, the Court ends the class period at March 1, 2008.

## V. *Rule 23(C) Findings*

As the Court has granted the motion for class certification, the Court "must define the class and class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Rule 23(c)(1)(B).

The Class is defined as: All residents of the State of Florida who, before March 1, 2008, (1) were solicited by Capital One by mail and/or telephone; (2) who were marketed by Capital One for "Payment Protection"

coverage for their credit card account balances; and (3) who paid for "Payment Protection" coverage. (Doc. # 32 at 1).

The Sub–Class is defined as: A subset of all residents of the State of Florida who, before March 1, 2008, were retired or who were senior citizens at the time that they were solicited for, and received, and made payments for, the "Payment Protection" coverage from Capital One. (Doc. # 32 at 2).

This Court has addressed the claims and other issues involved in this class action in this order and its order adopting Judge Jenkins' initial report and recommendation, and this Court incorporates those orders by reference. (Doc. ## 43, 61).

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The report and recommendation of Elizabeth A. Jenkins, United States Magistrate Judge (Doc. # 96) is **ADOPTED, CONFIRMED,** and **APPROVED** and is made a part of this Order for all purposes, including appellate review.

(2) Plaintiffs' motion for class certification (Doc. # 32), as amended (Doc. # 55) is granted as specified in this Order.

**DONE** and **ORDERED.**

### *ORDER*

This matter comes before the Court pursuant to Defendants' Motion for Reconsideration (the "Reconsideration Motion" Doc. # 104), filed on October 2, 2009. On October 16, 2009, Plaintiffs filed their Response in Opposition to the Reconsideration Motion (Doc. # 109).

Upon due consideration and for the reasons that follow, the Court denies the Reconsideration Motion.

1. Defendants removed the case from state court on January 18, 2008, asserting diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). (Doc. # 1).

2. As stated by Plaintiffs, "Payment Protection is represented to the consumer to be a Capital One product that will pay minimum payments on credit cards under certain circumstances for a

### I. *Background*

Plaintiffs filed a second amended class action complaint against Defendants on February 28, 2008. (Doc. # 16).[1] Plaintiffs are comprised of a class and sub-class of Defendants' current and former customers who were solicited to participate in Defendants' Payment Protection program.[2]

Plaintiffs characterize the Payment Protection program as "virtually worthless because of the numerous restrictions that are imposed after the consumer accepts or receives the product, and because of the administrative and bureaucratic hurdles that are placed in the way of the Florida consumer who attempts to secure payments from Capital One under this coverage." (Doc. # 16 at ¶ 24). Plaintiffs explain: "This product is sold to Florida consumers without any consideration for the circumstances or any reasonable investigation into facts that may cause the product to be worthless to the consumer. For instance, many Florida senior citizens and retired persons are charged for this product although they are categorically excluded from Payment Protection payments." (Doc. # 16 at ¶ 25).

Among other things, Plaintiffs contend that Defendants' solicitation of Plaintiffs' participation in the Payment Protection program was in violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. §§ 501.201, et seq.

On October 30, 2008, Plaintiffs filed their motion for class certification (Doc. ## 32, 33) and Defendants filed a response in opposition (Doc. # 35) on November 13, 2008. Plaintiffs filed a reply (Doc. # 40), and Defendants filed a sur-reply (Doc. # 41).

This Court referred the class certification motion to Judge Jenkins for the issuance of a report and recommendation, and on December 16, 2008, Judge Jenkins filed her initial

limited period of time, and thereby 'protect' the consumer's credit by insuring that timely payments are made on account balances so that the consumer does not sustain additional fees, charges and penalties on credit card balances or adverse credit reporting to the credit bureaus." (Doc. # 16 at ¶ 4).

report and recommendation (Doc. # 43). In her initial report and recommendation, Judge Jenkins determined, among other things, that Plaintiffs satisfied Rule 23(a)'s numerosity, commonality, and typicality requirements. However, Judge Jenkins determined that Plaintiffs failed to satisfy Rule 23(a)'s adequacy requirement. Judge Jenkins recommended that Plaintiffs be permitted to present additional evidence and briefing on the issue of adequacy.

On January 30, 2009, Plaintiffs filed the amended motion for class certification addressing the areas found to be deficient by Judge Jenkins. (Doc. ## 55, 56). On April 10, 2009, Defendants filed a response in opposition to the amended motion for class certification (Doc. # 66), and on April 20, 2009, this Court referred the amended motion for class certification to Judge Jenkins for the issuance of a second report and recommendation. (Doc. # 70). On August 20, 2009, Judge Jenkins filed her second report and recommendation, in which she recommended that the amended motion for class certification be granted in part. (Doc. # 96).

Defendants objected to the second report and recommendation, and after hearing from Plaintiffs, this Court adopted the second report and recommendation. (Doc. ## 97, 100, 101).

## II. *Motion for Reconsideration*

Defendants seek an order of reconsideration. Specifically, they contend that Plaintiffs should not be permitted to maintain a class action suit. Defendants argue that, after this Court made findings and entered orders concerning class certification, the Eleventh Circuit issued *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256 (11th Cir.2009), a case which "represents an intervening change in the law." (Doc. # 104 at 1).

Defendants also argue that, after this Court made findings and rulings concerning standing and the adequacy of the class representative, Plaintiff Kenneth Spinelli, the class representative, "gave testimony that shows he lacks standing and is atypical of the class and sub-class ... [and] such testimony represents new evidence". (Doc. # 104 at 1). Last, Defendants assert that this Court committed "clear error" when it adopted the reports and recommendations of Judge Jenkins because "critical findings" therein were "unsupported by any evidence." (Doc. # 104 at 2).

## III. *Legal Standard*

■ As stated in *Florida College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc.,* 12 F.Supp.2d 1306, 1308 (M.D.Fla. 1998), "A motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."

■ This Court recognizes three basic grounds to justify reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Fla. College of Osteopathic Med., Inc.,* 12 F.Supp.2d at 1308. Further, as explained in *Ludwig v. Liberty Mutual Fire Ins. Co.,* Case No. 8:03–cv–2378–T–17–MAP, 2009 WL 3053696, *3, 2005 U.S. Dist. LEXIS 37718, at *8 (M.D.Fla. Mar. 30, 2005), "This Court will not reconsider its judgment when the motion for reconsideration fails to raise new issues but, instead, relitigates that which the Court previously found lacking." *Id.* at **3–4, 2005 U.S. Dist. LEXIS 37718, **9–10. In addition, "a motion for reconsideration is not the proper forum for the party to vent dissatisfaction with the Court's reasoning." *Id.* at *4, 2005 U.S. Dist. LEXIS 37718, *11 (citation omitted).

## IV. *Analysis*

### A. *Change in the Law*

Defendants' argument that the *Vega* case represents an "intervening change in the law" warranting reconsideration is not valid. This Court's order adopting Judge Jenkins' report and recommendation and granting class certification was decided *after* the Eleventh Circuit issued its decision in *Vega.* Furthermore, the Court's order granting class certification, the August 20, 2009 report and recommendation (Doc. # 96 at 11), and the

parties' briefs concerning class certification discussed the *Vega* decision.[3]

Defendants' "intervening change in the law" arguments are better classified as arguments objecting to the manner in which this Court applied existing law. In fact, Defendants' "intervening change in the law" arguments are arguments that this Court has considered and rejected in its prior orders. Defendants' arguments on this point do not warrant reconsideration of the Court's decision to grant class certification.

### B. *New Evidence*

Defendants contend that Kenneth Spinelli's deposition testimony is "new evidence" that warrants an order of reconsideration. Similar to Defendants' "intervening change in the law" arguments, Defendants' "new evidence" argument is flawed and unavailing.

In its September 18, 2009 order, this Court determined that, of the putative class representatives, only Kenneth Spinelli was qualified to serve as a Rule 23(a)(4), Fed.R.Civ.P., class representative. The Court stated as follows as to Mr. Spinelli:

> Defendants contend Judge Jenkins erred when she determined that Spinelli will fairly and adequately protect the interest of the class. Defendants contend that "Spinelli testified that he does not know what a class representative is, what responsibilities a class representative has, or what claims are being asserted in this case. He further testified that he has not participated in formulating case strategy, has not discussed the goals of the litigation with counsel, and, in fact, generally communicates with counsel less than twice a year." (Doc. # 97 at 3).
>
> Plaintiffs counter that Defendants have "selectively" relied upon Spinelli's deposition testimony in an effort to make him look as inadequate as possible. (Doc. # 100 at 3). Plaintiffs point to portions of Spinelli's deposition testimony demonstrating that Spinelli is knowledgeable about the Payment Protection plan and

the purpose of the class action. This Court has reviewed the deposition testimony and determines, as Judge Jenkins did, that Spinelli is adequate. Spinelli is a retired senior citizen residing in Florida who purchased Payment Protection, he is not a professional plaintiff. Judge Jenkins found that Spinelli recognizes his duties to include testifying truthfully in this matter, attending depositions, and attending trial if necessary. Further, Spinelli promised to represent the class members to the best of his abilities. (Doc. # 96 at 8). At times his deposition testimony reveals some unfamiliarity with the legal system; however, this is not a sufficient basis to exclude him as a class representative. Upon due consideration, the Court finds that Spinelli is an adequate class representative under Rule 23(a)(4).

(Doc. # 101 at 8–9).

The Court considered the deposition testimony quoted in the Reconsideration Motion when the Court issued its order adopting the second report and recommendation. The deposition testimony at issue (Doc. # 69) is not "new evidence" at all, and Defendants' arguments concerning Mr. Spinelli are all arguments that this Court has previously considered and rejected. Accordingly, the Court declines to reconsider its analysis of this issue.

### C. *Clear Error*

Last, Defendants argue that this Court committed clear error when it adopted Judge Jenkins' reports and recommendations and allowed Plaintiffs to maintain a class action. Under the "clear error" label, Defendants delineate the following five arguments:

(1) The Court committed clear error by shifting the evidentiary burden to Defendants;

(2) The Court applied the wrong standard to arrive at the conclusion that Spinelli is adequate to serve as class and subclass representative;

---

**3.** The Court recognizes that Judge Jenkins' initial report and recommendation was decided prior to the *Vega* decision. (Doc. # 43). However, this fact does not require reconsideration. The final decision to allow this action to proceed as a class action was made after *Vega* and was made in accordance with *Vega*.

(3) The order fails to address the conflicts arising from the appointment of a single representative for both the class and the subclass;

(4) The class certification order errs in finding that Plaintiffs have satisfied Rule 12(b)(3) (predominance and superiority); and

(5) Reconsideration of the Court's order is necessary to clarify the applicable class period.

(Doc. # 104).

The Court has carefully considered each of the arguments above, and none warrant reconsideration of the Court's orders. As to Defendants' argument that the burden of proof has been wrongfully shifted to them, the Court finds that both parties know that Plaintiffs bear the burden of proof in this action. Defendants' argument concerning the burden of proof focuses on the following sentence regarding the element of commonality in Judge Jenkins' initial report and recommendation: "Given that hundreds of thousands of potential class members are or were enrolled in the program, *and the lack of evidence that these individuals were informed of their benefits in individualized manners,* Plaintiffs have satisfied the commonality requirement for both the class and the sub-class." (Doc. # 43 at 9–10) (emphasis added).

Defendants take Judges Jenkins' statement out of context and distorts her analysis. As argued by Plaintiffs, "Defendants parse the findings of the Court and fixate upon [a] single snippet .... This solitary statement does not bespeak a shifting of any evidentiary burden. To the contrary, it merely emphasizes that Defendants failed to capitalize on the opportunity during discovery to disclose the existence of individualized marketing." (Doc. # 109 at 15).

Plaintiffs bore and carried their burden of proof regarding maintenance of a class action, and at no time did this Court improperly shift the burden of proof to Defendants. Accordingly, the Court is not required to reconsider its order on the basis of an improper shifting of the burden of proof to Defendants.

Next, Defendants, once again, challenge Plaintiff Spinelli's status as class and subclass representative. This Court has already determined that reconsideration is not warranted on the basis of Mr. Spinelli's role in this action. The Court does not credit Defendants' arguments regarding Mr. Spinelli, as class and sub-class representative and moves on to Defendants' fourth argument: that the Court improperly conflated its analysis of the Rule 23(b)(3), Fed.R.Civ.P., elements of predominance and superiority.

As required by Rule 23(b)(3), Fed. R.Civ. P., the Court has examined whether "common questions of law or fact predominate over questions affecting only individual class members ('predominance')" and whether "a class action is superior to other available methods for adjudicating the controversy ('superiority')." *Vega,* 564 F.3d at 1265. (Doc. # 96 at 11).

Defendants characterize this Court's analysis of predominance as "narrow" and assert that reconsideration of the order certifying the class is needed because the Court failed to provide a sufficiently detailed analysis of predominance. However, the Court is not persuaded that its analysis must be as detailed as Defendants suggest. As to the issue of predominance, Judge Jenkins provided as follows in her second report and recommendation:

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir.2004) (alteration in original) (citation and internal quotation marks omitted). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby,* 513 F.3d at 1324 (citation and internal quotation marks omitted).

Plaintiffs contend that common questions are "legion in this action and stem from Defendants' fraudulent, deceptive, unlawful and/or unfair practices to sale, bill and/or market its Payment Protection 'product'" (Dkt. 33 at 12). Plaintiffs further submit that "the focus of the trial will be the conduct of Capital One and whether they misled and/or failed to disclose material facts to consumers" (*Id.*)

Defendants respond that Plaintiffs' arguments "assume that every single enrollee in Payment Protection residing in Florida believes she (1) was not provided with sufficient information about the product prior to enrolling *and* (2) was subsequently provided with 'misleading and obfuscatory' information" (Dkt. 35 at 14). Defendants maintain that each putative class member would individually have to show 1) what information was received from Defendants; 2) when and how the information was received; 3) how the information was misleading or deceptive; 4) actual deception; and 5) reliance on the information that caused damages (*Id.* at 14–15).

The parties obviously disagree as to the nature of this suit. As the court previously recognized, "Plaintiffs submit that *anyone* who purchased 'Payment Protection' was deceived and suffered a resulting injury because 'the exclusions and administrative and bureaucratic hurdles imposed by Capital One make the Payment Protection product virtually worthless'" (Dkt. 43 at 4 (quoting Dkt. 33 at 3)). "Plaintiffs propose that anyone who purchased 'Payment Protection' was necessarily deceived as to the value of 'Payment Protection' and suffered damages in the form of funds expended to enroll in the program" (Dkt. 43 at 4). Thus, Plaintiffs' class definition "properly leaves for trial the determination of whether 'Payment Protection' in fact has value to those who qualify for the program" (*Id.* at 5).

"A consumer claim for damages under FDUTPA has three elements: (1) a decep-

tive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortgage Corp. v. Barton,* 988 So.2d 82, 86 (Fla. 4th DCA 2008). Here, the question is not whether Payment Protection had unique value to each customer, but rather whether the product had some value or no value. This is a "binary and predominant issue" that encompasses the putative class members' individual claims. *See e.g. Busby,* 513 F.3d at 1324–26 (finding Rule 23(b)(3) satisfied where class representative contended that defendant provided "no services" in exchange for its fee; whether defendant provided "any services" or "no services" was "a binary and predominant issue").[4] Moreover, this question predominates over any individualized inquiries into Plaintiffs' damages, i.e., the funds expended to enroll in Payment Protection. *See id.* at 1322, 1326 (finding common issues predominated despite defendant's claim that class included individuals that paid different amounts for different services).

Consequently, Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement. (Doc. # 96 at 11–13).

This Court adopted Judge Jenkins' detailed discussion of predominance and added, "After reviewing Judge Jenkins' analysis and the parties' submissions, the Court concludes that Plaintiffs have satisfied the requirements of predominance and superiority. The Court agrees that the issue of whether the Payment Protection program was worthless predominates over individual inquires." (Doc. # 101 at 14).

The Court has given a fresh look at the issue of predominance and, as it did in its order certifying the class, now determines that Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement.

In addition, Defendants argue that, when addressing the issue of superiority of a class action, the Court failed to account for difficulties associated with "managing" this case as a class action. Defendants contend, "A

---

4. If Payment Protection had value to its enrollees, Plaintiffs may not prevail. *See Busby,* 513 F.3d at 1326 ("If [defendant] provided any services for the [fee], then, as [plaintiff's] counsel made abundantly clear at oral argument, the

class action cannot continue.") At this stage of the proceedings, however, the inquiry is simply whether "this matter is suited for class review." *See Id.*

district court abuses its discretion when it finds the superiority element has been met but has not conducted any kind of analysis or discussion regarding how it would administer the trial." (Doc. # 104 at 23) (internal citation omitted).

Plaintiffs counter that "this case is a relatively simple consumer class action, comprised of the type of claims that have often been certified as class actions, and that have been well managed by trial courts." (Doc. # 109 at 20). The Eleventh Circuit has commented on the manageability prong of Rule 23, Fed.R.Civ.P., and has noted:

> The final factor expressly specified in Rule 23(b)(3) that courts must weigh in deciding to certify a class action is whether certification will cause manageability problems. *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273 (S.D.Fla.2003) ("Severe manageability problems are a prime consideration that can defeat a claim of superiority"). This concern will rarely, if ever, be in itself sufficient to prevent certification of a class. "Courts are generally reluctant to deny class certification based on speculative problems with case management." *Managed Care Litig.*, 209 F.R.D. at 692. Even potentially severe management issues have been held insufficient to defeat class certification .... [W]e hold that the district court acted well within its discretion in concluding that it would be better to handle this case as a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly. The defendants have failed to point to any specific management problems—aside from the obvious ones that are intrinsic in large class actions—that would render a class action impracticable in this case.

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir.2004).

In this case, as in *Klay*, Defendants have not identified any specific management problems that would weigh against class certification.

Last, Defendants argue that reconsideration is needed to clarify the applicable class period. Defendants note, "the Court's order properly ends the class and sub-class period on March 1, 2008 ... [but] does not provide a start date for the class or sub-class period." (Doc. # 104 at 24). Defendants contend that the start date should be September 28, 2003. In Plaintiffs' response to the Reconsideration Motion, Plaintiffs submit, "there is no dispute about the applicable class period," and "the class period therefore runs from September 28, 2003, to March 1, 2008." (Doc. # 109 at 22). Accordingly, and in light of the agreement of the parties' concerning the class period, no reconsideration is needed to address the boundaries of the class period.

In conclusion, the Court determines that it is appropriate to deny the Reconsideration Motion.

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

Defendants' Motion for Reconsideration (Doc. # 104) is **DENIED.**

**DONE and ORDERED.**

### *REPORT AND RECOMMENDATION*

ELIZABETH A. JENKINS, United States Magistrate Judge.

Before the court are Plaintiffs' **Motion for Class Certification** (Dkt.32) and **Memorandum of Law in Support** (Dkt.33); Defendants' **Memorandum of Law in Opposition** (Dkt.35); Plaintiffs' **Reply** (Dkt.40); Defendants' **Sur–Reply** (Dkt.41); Plaintiffs' **Amendment to Plaintiffs' Motion for Class Certification** (Dkt.55), **Brief in Support** (Dkt.56), and supporting affidavit (Dkt.57); and Defendants' **Opposition** (Dkt.66), **Request for Judicial Notice** (Dkt.67), and supporting affidavits (Dkt. 68; Dkt. 69).[1] Plaintiffs ask the court to certify a class and sub-class pursuant to Rule 23, Fed.R.Civ.P., and to appoint certain named plaintiffs as class and sub-class representatives.

---

1. The District Judge has referred the motion to the undersigned for a report and recommendation (Dkt.70).

## Background

On February 28, 2008, Plaintiffs filed a Second Amended Class Action Complaint against Defendants, the "the largest issuer of credit cards in the country" (Dkt. 16 at 2).[2] Plaintiffs are a proposed class and sub-class of Defendants' current and former customers who were solicited to participate in Defendants' "Payment Protection" program (*Id.*). According to Plaintiffs, Payment Protection is a "product that will pay minimum payments on credit cards under certain circumstances for a limited period of time, and thereby 'protect' the consumer's credit" (*Id.*). Plaintiffs contend that Payment Protection is "virtually worthless because of the numerous restrictions that are imposed after the consumer accepts or receives the product, and because of the administrative and bureaucratic hurdles that are placed in the way of the Florida consumer who attempts to secure payments from [Defendants] under this coverage" (*Id.* at 6). Plaintiffs submit that Defendants' solicitation of Plaintiffs' participation in Payment Protection was a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.* (*Id.* at 14).

2. Plaintiffs filed their initial complaint in state court, however, Defendants removed the case to federal court asserting diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) (Dkt.1).

3. On December 16, 2008, the court recommended that Plaintiffs' Motion for Class Certification be denied because Plaintiffs had failed to satisfy the adequacy requirement of Rule 23(a)(4), Fed.R.Civ.P., but also recommended that Plaintiffs be afforded an opportunity to amend their motion (Dkt.43). On January 30, 2009, before the District Judge ruled on that recommendation, Plaintiffs filed an amendment to their class certification motion addressing the issue of adequacy (Dkt.55). On March 14, 2009, the District Judge adopted the recommendation and retroactively granted Plaintiffs permission to file their amendment (Dkt.61). On April 10, 2009, Defendants responded to the amendment (Dkt.66).

4. Defendants have not argued that there are substantial conflicts of interest between the proposed class representatives and the class. However, Defendants assert that a former partner in Carney Williams, one of the law firms representing Plaintiffs, recently "pled guilty to federal crimes relating to his misappropriation of $9.3 million in settlement funds from another class

## Analysis

Certification of a class under Rule 23, Fed. R.Civ.P., requires a court to determine whether the Rule's requirements of numerosity, commonality, typicality, and adequacy are satisfied. *Davis v. Coca–Cola Bottling Co.*, 516 F.3d 955, 966 (11th Cir.2008). Plaintiffs have satisfied Rule 23(a)'s numerosity, commonality, and typicality requirements (Dkt.61). Because Plaintiffs initially failed to satisfy the adequacy requirement, they have amended their motion to address the issue.[3]

### I. *Adequacy of Representation*

A class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4), Fed.R.Civ.P. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir.2008) (citation and internal quotation marks omitted).[4]

action" (Dkt. 92 at 1). Defendants further submit that this individual "until recently held approximately 90% of the firm's equity" (*Id.*). Defendants suggest that Carney Williams is unable "to protect against theft of class settlement funds" and that Plaintiffs' failure to notify the court of these circumstances "should disqualify plaintiffs' counsel from serving as class counsel" (*Id.* at 2–3).

Plaintiffs respond that the individual at issue was "of counsel" to the firm at the time of his misdeeds and that upon learning of his actions "the partners of Carney Williams immediately brought the matter to the attention of [Judge Rakoff,] the jurist before whom the affected settlement was pending" (Dkt. 94 at 1). Plaintiffs represent that Judge Rakoff commended the Carney Williams partners for bringing the matter to his attention (*Id.* at 2). Moreover, Judge Rakoff subsequently appointed a partner in Carney Williams to serve as an additional escrow agent for the settlement funds at issue (*Id.*). Finally, Plaintiffs aver that the individual who misappropriated the funds never held an ownership interest in Carney Williams (*Id.* at 3 n. 2).

While the misappropriation of settlement funds by a former "of counsel" with a law firm is a serious issue, the records show that Carney Williams will adequately represent the class in

Plaintiffs argue that their subsequent filings demonstrate that proposed class representatives Kenneth Spinelli ("Spinelli"), Janice Scott ("Scott"), and Heather Sprague ("Sprague") 1) "have taken an active role in this litigation," 2) "are aware of the obligations associated with being a class representative," and 3) "are willing and able to invest their time in the continued prosecution of this [l]itigation" (Dkt. 56 at 2).

In support of these contentions, Plaintiffs filed copies of affidavits in which Spinelli and Scott[5] each "agree[ ] to serve as a lead plaintiff in this litigation" and describe their involvement in this case as follows:

I have participated in multiple telephone calls and had face to face meetings with counsel. During the conference calls and visits we discussed my experience with Capital One's payment protection product, why I acquired the product and the strategy and litigation plan for this case. In addition, we discussed my responsibilities as lead plaintiff and my duties in monitoring the litigation, including holding regular meetings and maintaining regular contact with counsel. We also discussed that, as lead plaintiff, I am a fiduciary of the Class and responsible for acting in the best interests of the Class throughout this litigation....

My participation to date includes:

(a) searching for documents and answering discovery requests relevant to my events;

(b) reviewing all pleadings and effectively monitoring the litigation;

(c) maintaining regular contact with counsel;

(d) making myself available for deposition and trial.

(Dkt. 56 Ex. A & B).[6] Plaintiffs also filed the title page and signature page of responses by Spinelli, Scott, and Sprague to Defendants' interrogatories and requests for production (Dkt. 56 Ex. C, D, & E). Plaintiffs emphasize that each of these individuals was willing to sit for depositions in October 2008 and January 2009 (Dkt. 56 at 4). Finally, Plaintiffs aver that the proposed representatives have provided documents and have met repeatedly with counsel (*Id.* at 5).

Defendants respond that Plaintiffs' allegations as to the adequacy of the proposed class representatives are undermined by their testimony during depositions taken in January 2009. Defendants argue that the testimony indicates that neither Spinelli nor Scott 1) "knows what a class representative is," 2) "knows what responsibilities a class representative has," 3) "knows what claims are being asserted in this action," 4) "has participated in formulating a case strategy with counsel," or 5) "has discussed the goals of the case with counsel" (Dkt. 80 at 2). Additionally, Defendants challenge Sprague's adequacy due to her non-appearance for her deposition and Plaintiffs' failure to provide an alternative date for Sprague's deposition (*Id.* at 1 n. 3).

---

this matter. Counsels' conduct in bringing the matter to the attention of the presiding judge is commendable. Moreover, the fact that the presiding judge appointed a partner in Carney Williams to serve as an escrow agent reflects a continuing confidence in Carney Williams' ability to protect against the misappropriation of class funds.

**5.** Plaintiffs did not file an affidavit for Sprague.

**6.** Defendants note the fact that the proposed representatives reside in Florida yet their affidavits were notarized in Arkansas (Dkt. 80 at 1). The affidavits of Spinelli and Scott were notarized in Arkansas on January 14 and 16, 2009 (Dkt. 56 Ex. A; Dkt. 56 Ex. B). The same month, however, Spinelli and Scott both testified at their depositions that they were residents of Florida (Dkt. 78 Ex. A at 6; Dkt. 78 Ex. B at 4).

In interrogatory responses dated May 15, 2009, Spinelli affirmed that he signed his affidavit in Florida and that the notary was not present at the time (Dkt. 81 Ex. 6). However, Spinelli asserted the notary had spoken to him on the phone numerous times and had reviewed several documents with his signature on it (*Id.*). Spinelli further stated that his attorneys had witnessed him sign several documents and that the attorneys and notary together "had reasonable belief and satisfactory evidence that they were familiar with [his] signature and that it was [his] signature on the affidavit" (*Id.*). Scott served similar interrogatory responses (Dkt. 81 Ex. 7).

The parties dispute whether Florida or Arkansas law governs the validity of the affidavits (Dkt. 80 at 1; Dkt. 81 Ex. 6; Dkt. 81 Ex. 7). While the circumstances may be questionable, the court finds the deposition testimony more instructive on the issues presented.

"[N]either the Eleventh Circuit nor the Supreme Court has established specific standards for Rule 23(a) adequacy." *London v. Wal–Mart Stores, Inc.,* 340 F.3d 1246, 1254 (11th Cir.2003). In non-securities cases, the question is not whether proposed class representatives "virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 728 (11th Cir.1987). Rather, the court must assess "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the . . . class." *London,* 340 F.3d at 1253 (citation and internal quotation marks omitted). This assessment must be "stringent," especially where the class representative's potential recovery is dwarfed by the potential attorneys' fees. *Id.* at 1254.[7]

### a. *Sprague's Adequacy*

■ Plaintiffs have failed to provide sufficient evidence establishing Sprague's adequacy as a class representative. The title page and signature page of Sprague's responses to Defendants' interrogatories and requests for production (Dkt. 56 Ex. E) do not themselves establish her adequacy and Plaintiffs have provided no other evidence that might do so. Unlike Scott and Spinelli, Sprague provided no affidavit reflecting her understanding and acceptance of the duties of a class representative. Further, Sprague failed to appear for a properly noticed January 2009 deposition and had not appeared for a deposition as of April 10, 2009 (Dkt. 66 at 4). Her lack of interest in the lawsuit makes her unsuitable to represent the putative class. Because Plaintiffs have failed to demonstrate that Sprague would represent the class with sufficient vigor, Sprague is not an adequate class representative.

### b. *Scott's Adequacy*

Unlike Sprague, the evidence regarding Scott's adequacy is not limited to the title page and signature page of her responses to Defendants' interrogatories and requests for production (Dkt. 56 Ex. D). Rather, Scott signed an affidavit indicating an awareness of her duties as a class representative and describing her past participation in this case (Dkt. 56 Ex. B). Moreover, Scott appeared for her January 20, 2009 deposition to answer questions regarding the factual issues underlying this lawsuit, the makeup of the proposed class, her duties as class representatives, and her past involvement in this case.

Scott's deposition testimony, however, reflects serious inconsistencies with the representations set forth in her affidavit. For instance, Scott asserted that she did not know what class she represented, where the class was located, or how she became a class representative (Dkt. 78 Ex. B at 39–40, 44). While asserting that she would be an appropriate class representative, Scott indicated that she had no other duties beyond "stand[ing] up for [her] rights" (*Id.* at 43–44). She indicated that she did not know whether she had a responsibility to attend the trial but in any case would not do so (*Id.* at 47). There was also testimony that she had not 1) participated in formulating strategy in this case, 2) discussed the goals of the case, 3) talked about possible settlement of the case, or 4) performed any factual investigation regarding the allegations in the complaint before it was filed (*Id.* at 34–35). Finally, Scott summed up her efforts at monitoring the case as follows:

> Well, when I speak with him, he just tells me what is going on, and I take it in. You know, he lets me know what's going on, and I just go along with what he says, which I didn't think he would lead me in the wrong direction. He's just straight to the point.

(*Id.* at 103–04).

■ Scott clearly has little or no understanding of how she became a class representative or what class she seeks to represent. Even a minimally vigorous involvement in this case would have revealed that the putative class is located in Florida. Further problematic is Scott's testimony that she has little understanding of her responsibilities and that she does not plan to attend the trial.

---

7. Here, given that Plaintiffs' putative class may contain hundreds of thousands of members (Dkt. 43 at 8) and that the individual recovery amounts may be relatively small (Dkt. 43 at 10 n.9), the need for a stringent examination is "especially great." *London,* 340 F.3d at 1254.

Most troubling is Scott's assertion that she has not discussed the goals of the case and simply goes along with what counsel says. Such practice does not reflect a willingness or ability to protect the interests of the class against the "possibly competing interests of the attorneys." *Kirkpatrick*, 827 F.2d at 727. Because Scott's testimony directly undermines many of the representations set forth in her affidavit, Plaintiffs have not met their burden of demonstrating Scott's adequacy as a class representative.

**c.** *Spinelli's Adequacy*

As with Scott, Plaintiffs have provided the title page and signature page of Spinelli's responses to Defendants' interrogatories and requests for production (Dkt. 56 Ex. C). Spinelli also signed an affidavit indicating an awareness of his duties as a class representative and describing his past participation in this case (Dkt. 56 Ex. A). Finally, Spinelli appeared for a deposition on January 22, 2009 to answer questions regarding the factual issues underlying this lawsuit, the make-up of the proposed class, his duties as class representatives, and his past involvement in this case.

Spinelli's testimony reflects that he decided to sue Defendants because it was "extraordinarily difficult" to secure the unemployment and disability benefits allegedly promised by Payment Protection (Dkt. 78 Ex. A at 9).[8] After receiving copies of the complaints, he compared them with his own files to verify the accuracy of the allegations (*Id.* at 17). Spinelli is aware that the class is located in Florida and that the class includes Defendants' customers that "felt the same as [he] did, that they didn't receive the benefits they were promised" (*Id.* at 20). He recognizes that his duties include testifying truthfully in this matter, attending depositions, and attending the trial if necessary (*Id.* at 19–21). Finally, he promises to represent the class members "to the best of [his] abilities" (*Id.* at 48).

Considering the evidence as a whole, Spinelli's testimony and participation in this case indicate that he will vigorously represent the

interests of the class in this matter. *See e.g. Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 578–79 (M.D.Fla.2006) (finding proposed representative adequate where his deposition testimony demonstrated, "albeit minimally," that he 1) understood what the case was about, 2) understood his responsibility to represent the interests of others, 3) had participated and was willing to continue to participate in the litigation of the class claims, and 4) was willing and able, via class counsel, "to take an active role in the litigation and to protect the interests of the class as a whole"). There is "no persuasive reason to believe that the class members will suffer or that their due process rights will suffer as a result of [Spinelli's] representation." *Id.* at 579. Accordingly, Spinelli is an adequate representative of both the class and the subclass in this matter.

**d.** *Costs of Notice*

 Defendants contend that neither Plaintiffs nor Plaintiffs' counsel have shown themselves capable of providing adequate notice of this suit to potential class members (Dkt. 66 at 13). Defendants assert that the size of the putative class "easily exceeds 729,-000" and estimate that the cost of notifying potential class members would exceed $400,000 (*Id.*). Defendants submit that Plaintiffs have "failed to establish that they or their counsel are willing and able to bear this cost, and hence have not established their adequacy to provide the notice to putative class members that due process requires" (*Id.* at 13–14).

On May 20, 2009, Plaintiffs replied to Defendants' contentions (Dkt.75). Plaintiffs' counsel represented that they had "agreed to advance the costs of litigation" and that it had "always been contemplated that upon certification of the proposed class, they would notify the class through the notice program approved by this Court" (*Id.* at 3). In support of these statements, Brent Walker, Esq. filed a sworn declaration averring that counsel "are financially able and willing to provide notice to the proposed Class in accord with a court-approved notice program" (Dkt.76).

---

**8.** Although Spinelli also believed that this case concerned issues such as credit limits and annual fees, this belief does not mean he is unaware of the issues actually raised in the complaint.

Mr. Walker clarified that "[i]f the Litigation generates a fund for the Class, Plaintiffs' Counsel will seek reimbursement of their costs and expenses by application to the Court. If no recovery for the Class is obtained, there will be no obligation on the Plaintiffs' part to pay any costs or expenses" (*Id.*).

On May 27, 2009, Defendants filed a sur-reply arguing that Plaintiffs had failed to provide evidence showing their ability and willingness to bear the costs of class notice (Dkt.82). Defendants reasoned that Plaintiffs had only demonstrated their attorneys' agreement to advance the costs of litigation but "ha[d] not shown—and ha[d] not even alleged—that their counsels' firms can and will pay the costs associated with class notice" (*Id.* at 2). Defendants submitted that "Mr. Walker, who is not a partner at his firm, did not offer any evidence to show that he has the authority to commit his firm to notice costs at all, let alone notice costs in excess of $400,000" (*Id.*).

Class representatives have been deemed adequate despite their reliance on counsel to bear the costs of postage for class notice. *See Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir.1978).[9] In *Roper*, the court noted that counsel "properly offered to advance that sum looking to the named plaintiffs for repayment if required. Their clients offered a note and mortgage on realty as security. Counsel [had] also offered to give a bond to guarantee that the notice costs [would] be met." *Id.* Notably, the court recognized that finding representatives inadequate based on an inability to finance a class action

> is a rather tricky consideration that must be treated with some care because if financial capacity is emphasized, it may mean that poorer claimants will be prevented from maintaining class actions. Accordingly, discretion is required; although the ability to fund the case is a factor, it

probably should not be a determinative factor.

*Id.* at 1112 n. 4.

Given Mr. Walker's sworn statement that his firm is able and willing to advance the class notification costs in this matter, the adequacy requirement is met in financial terms. *See e.g. Alfred v. Okeelanta Corp.*, No. 89–8285–CIV–RYSKAMP, 1991 WL 177658, at *13 (S.D.Fla. Apr.16, 1991) (finding class counsel adequate where they "agreed to advance litigation costs, including the costs of notice to class members"). Indeed, Spinelli's personal ability to bear the costs of notice is of little import given Mr. Walker's assurance that any notice costs advanced by his firm will not be recovered from Spinelli directly but rather only from any fund generated as a result of this suit (Dkt.76). Accordingly, Spinelli is an adequate class representative regardless of his ability to bear the costs of class notice.

## II. *Predominance and Superiority*

In addition to satisfying the requirements in Rule 23(a), plaintiffs seeking to certify a class must satisfy the requirements of at least one subsection of Rule 23(b). *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir.2009). Plaintiffs seek to proceed pursuant to Rule 23(b)(3) (Dkt. 33 at 12–16), "which additionally requires findings: (1) that common questions of law or fact predominate over questions affecting only individual class members ('predominance'); and (2) that a class action is superior to other available methods for adjudicating the controversy ('superiority')." *Vega*, 564 F.3d at 1265 (citations omitted).

### a. *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to

---

9. Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Cir-

cuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir.2004) (alteration in original) (citation and internal quotation marks omitted). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby*, 513 F.3d at 1324 (citation and internal quotation marks omitted).

Plaintiffs contend that common questions are "legion in this action and stem from Defendants' fraudulent, deceptive, unlawful and/or unfair practices to sale, bill and/or market its Payment Protection 'product' " (Dkt. 33 at 12). Plaintiffs further submit that "the focus of the trial will be the conduct of Capital One and whether they misled and/or failed to disclose material facts to consumers" (*Id.*).

Defendants respond that Plaintiffs' arguments "assume that every single enrollee in Payment Protection residing in Florida believes she (1) was not provided with sufficient information about the product prior to enrolling *and* (2) was subsequently provided with 'misleading and obfuscatory' information" (Dkt. 35 at 14). Defendants maintain that each putative class member would individually have to show 1) what information was received from Defendants; 2) when and how the information was received; 3) how the information was misleading or deceptive; 4) actual deception; and 5) reliance on the information that caused damages (*Id.* at 14–15).

The parties obviously disagree as to the nature of this suit. As the court previously recognized, "Plaintiffs submit that *anyone* who purchased 'Payment Protection' was deceived and suffered a resulting injury because 'the exclusions and administrative and bureaucratic hurdles imposed by Capital One make the Payment Protection product virtually worthless' " (Dkt. 43 at 4 (quoting Dkt. 33 at 3)). "Plaintiffs propose that anyone

who purchased 'Payment Protection' was necessarily deceived as to the value of 'Payment Protection' and suffered damages in the form of funds expended to enroll in the program" (Dkt. 43 at 4). Thus, Plaintiffs' class definition "properly leaves for trial the determination of whether 'Payment Protection' in fact has value to those who qualify for the program" (*Id.* at 5).

■ "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortgage Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008). Here, the question is not whether Payment Protection had unique value to each customer, but rather whether the product had some value or no value. This is a "binary and predominant issue" that encompasses the putative class members' individual claims. *See e.g. Busby*, 513 F.3d at 1324–26 (finding Rule 23(b)(3) satisfied where class representative contended that defendant provided "no services" in exchange for its fee; whether defendant provided "any services" or "no services" was "a binary and predominant issue").[10] Moreover, this question predominates over any individualized inquiries into Plaintiffs' damages, i.e., the funds expended to enroll in Payment Protection. *See id.* at 1322, 1326 (finding common issues predominated despite defendant's claim that class included individuals that paid different amounts for different services). Consequently, Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement.

### b. *Superiority*

The superiority prong of Rule 23(b)(3) focuses on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269 (citations omitted). "In many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues pre-

---

**10.** If Payment Protection had value to its enrollees, Plaintiffs may not prevail. *See Busby*, 513 F.3d at 1326 ("If [defendant] provided any services for the [fee], then, as [plaintiff's] counsel made abundantly clear at oral argument, the class action cannot continue.") At this stage of the proceedings, however, the inquiry is simply whether "this matter is suited for class review." *See id.*

dominate over individualized issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id.* (citations omitted).

"Rule 23(b)(3) provides what the Advisory Committee Notes describe as a non-exhaustive list of four factors that are pertinent to the finding of superiority." *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1358 (11th Cir.2009). These factors include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Rule 23(b)(3).

Here, "[t]here is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation, so the first factor does not counsel against class certification." *Klay,* 382 F.3d at 1269. The second factor is similarly unavailing to Defendants as "there are no class members separately pursuing other cases involving the same claims and parties." *Id.* Concentrating the litigation of Plaintiffs' claims in this forum is desirable given that 1) "the total amount sought by each individual plaintiff is small in absolute terms," 2) "the amounts in controversy would make it unlikely that most of the plaintiffs, or attorneys working on a contingency fee basis, would be willing to pursue the claims individually," and 3) this court has "already handled several preliminary matters." *Id.* at 1270–71. Finally, given that common issues predominate over any individualized issues, the court "would be hard pressed to conclude that a class action is less manageable than individual actions." *Id.* at 1273. Indeed, any management problems stemming from class cer-

tification would certainly be exceeded by the problems in managing hundreds of thousands of separate lawsuits. *See id.* (expressing doubt that class action would create more problems than 600,000 separate lawsuits). Altogether, Plaintiffs have shown that "it would be better to handle this case as a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly." *Id.*

### Conclusion

Plaintiffs have established, as required by Rule 23(a)(4), Fed.R.Civ.P., that Kenneth Spinelli is an adequate named representative for the proposed class and sub-class and will adequately prosecute this action. Moreover, Plaintiffs have satisfied the predominance and superiority requirements in Rule 23(b)(3), Fed.R.Civ.P.[11]

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) Plaintiffs' Motion for Class Certification (Dkt.32), as amended (Dkt. 55; Dkt. 56), be **GRANTED IN PART** to the extent that:

(a) Kenneth Spinelli is an adequate representative of Plaintiffs' proposed class and sub-class;

(b) Plaintiffs' counsel is adequate to represent Plaintiffs' proposed class and sub-class; and

(c) Plaintiffs' proposed class and sub-class satisfy the requirements of Rule 23(a)(4) and (b)(3), Fed.R.Civ.P.

---

11. In supplemental briefs (Dkt. 77; Dkt. 85), the parties dispute whether the class period must end on March 1, 2008 when Defendant Capital One became a national bank. Given that the motion referred to the undersigned addressed

only the requirements set forth in Rule 23(a)(4) and (b)(3), any issue regarding any limitations on the class period is premature and can be addressed at a later date, if appropriate.